941 So.2d 642 (2006)
STATE of Louisiana
v.
Jimmy D.J. GAUTHIER.
No. 2005-KA-1365.
Court of Appeal of Louisiana, Fourth Circuit.
September 27, 2006.
*644 Eddie J. Jordan, Jr., District Attorney, Battle Bell, IV, Assistant District Attorney, New Orleans, LA, for Appellee, State of Louisiana.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant, Jimmy D.J. Gauthier.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The defendant, Jimmy D.J. Gauthier, was convicted of simple battery and of intimidating a witness. He is appealing his conviction for intimidating a witness.

STATEMENT OF THE CASE
In June of 2003, Mr. Gauthier was charged in a bill of information with one count of second degree battery, a violation of La. R.S. 14:34.1 and with one count of intimidation of a witness, a violation of La. R.S. 14:129.1. He pled not guilty at his arraignment. The trial court judge found that Mr. Gauthier was competent to proceed to trial after considering the expert medical testimony at a competency hearing. Mr. Gauthier subsequently changed his not guilty plea to a plea of not guilty and not guilty by reason of insanity. A sanity hearing was then held to determine whether he suffered from any mental disease or defect that prevented him from distinguishing between right and wrong at the times the crimes were committed.
Mr. Gauthier was tried by a jury. He was found guilty of simple battery, a violation of La. R.S. 14:35, on the first count and guilty as charged on the second count. Mr. Gauthier was sentenced to six months in parish prison for simple battery and to five years in the custody of the Louisiana *645 Department of Corrections for intimidating a witness. The sentences were ordered to be served concurrently. Mr. Gauthier filed a motion to reconsider his sentence, which was denied, and a motion for appeal, which was granted.
The State filed a multiple offender bill of information charging Mr. Gauthier under the Habitual Offender Law, La. R.S. 15:529.1, and Mr. Gauthier filed a motion to quash the bill of information. As of the time that this appeal was lodged, Mr. Gauthier had not been adjudicated a multiple offender. Mr. Gauthier has reserved his right to appeal from any such adjudication, however.

STATEMENT OF THE FACTS
Tracy Bouvier, the victim in this case, testified that Mr. Gauthier had been her "boyfriend" for twelve years and that he was the father of her children. She then testified regarding the incident that led to the charges against Mr. Gauthier.
She said that she had awakened Mr. Gauthier so that he could get ready to go to work. When she woke him, he started accusing her of being unfaithful to him. When she denied that she had been unfaithful, Mr. Gauthier started "punching" her. She explained that the more she denied being unfaithful, the more Mr. Gauthier hit her. He hit her intermittently for about two hours. Ms. Bouvier stated that Mr. Gauthier hit her with his closed fist on both of her arms, both of her legs, and on her back. Only when Mr. Gauthier realized that he was late for work did he stop hitting Ms. Bouvier and leave to go to his place of employment.
Ms. Bouvier said that she did not call the police immediately after she was beaten, because she was scared. When she was being beaten and "got kind of loud at one point," Mr. Gauthier told her "to shutup [sic] and be quiet because if the neighbors would have came [sic] to the door, if they would have called the police, then by the time they would have came [sic] in there would have been nothing left of me." Ms. Bouvier also testified that "[n]umerous times he told [me] if I ever went to the police, or if I ever tried to leave him, that he would kill me."
Ms. Bouvier then said that she reported the beating to the police the next day because of her son's reaction when he saw one of the bruises on her arm. Her young son was very upset and said, "That's it. We are going to call the police." Ms. Bouvier and her children then traveled to the police station by bus, and she reported the beating.
Although Ms. Bouvier had difficulty walking after the beating, that problem resolved itself, but the pain in her left arm persisted. She testified that approximately ten days after the beating, it was still painful for her to move her left arm. Additionally, her arm had lumps on it, and she could not pick up anything. Therefore, she sought medical treatment at that time.
Ms. Bouvier also said that she had received approximately sixty letters from Mr. Gauthier that he sent to her while he was incarcerated. Most of the letters were sent during the first month that Mr. Gauthier was in jail. At trial Ms. Bouvier identified the letters and read a number of excerpts from them. In the letters, Mr. Gauthier both threatened her and professed his love for her.
New Orleans Police Department Detective Dira Godchaux, an officer trained to handle domestic abuse cases, also testified at the trial. She said that she met with Ms. Bouvier after she arrived at the police station to report the beating. Detective Godchaux stated that Ms. Bouvier was crying, that she appeared to be afraid, *646 and that she had extensive bruising on her arms, her upper thigh, and her back. Also, the bruised areas were swollen. It appeared that Ms. Bouvier's muscles were sore, because Ms. Bouvier had difficulty walking. Detective Godchaux also testified that Ms. Bouvier stated to her that Mr. Gauthier had said that he would kill Ms. Bouvier if she reported the beating to the police. Additionally, Ms. Bouvier reported that there had been prior incidents of domestic violence but that she had not reported them to the police.
Although Ms. Bouvier never told Detective Godchaux that Mr. Gauthier was armed with a weapon while he was beating Ms. Bouvier, the detective had him arrested for aggravated battery.[1] Detective Godchaux also testified that when he was taken to the police station, Mr. Gauthier acted in an uncontrollable manner. He struck his head against the wall, and he was screaming obscenities.
Dr. Raphael Salcedo, a member of the sanity and competency commissions that examined Mr. Gauthier, was called as a witness by Mr. Gauthier. Dr. Salcedo was qualified as an expert in forensic psychology. He testified that he and Dr. Richard Richoux had examined Mr. Gauthier twice and that on the basis of those examinations, they had diagnosed him with "impulse control disorder not otherwise specified" and with "mixed personality disorder with antisocial and grandiose features."
When Dr. Salcedo was asked whether Mr. Gauthier suffered from bipolar disorder, he said that Mr. Gauthier did not have bipolar disorder. Dr. Salcedo further testified that Mr. Gauthier "knows right from wrong now and I find no evidence that at the time of the alleged offense, or really at anytime in his life, has he suffered from a mental disorder of such severity so as to cripple him psychologically to such a degree that he would not be able to tell right from wrong." Dr. Salcedo further said that neither the impulse control disorder nor the personality disorder from which Mr. Gauthier suffered would cause him to be unable to distinguish right from wrong. Finally, although Mr. Gauthier's medial records indicated that bipolar disorder had at one time been considered as a possible diagnosis for Mr. Gauthier's problems, Dr. Salcedo and Dr. Richoux did not diagnose Mr. Gauthier with any type of psychotic mental illness.
Mr. Gauthier was found guilty of simple battery and of intimidating a witness. He is now appealing his convictions.

ERRORS PATENT
The record in this case reveals one possible error patent. When the trial court judge sentenced the defendant for the crime of intimidating a witness, she imposed a sentence of "five years in the Department of Corrections." She then stated, however, "[t]hat sentence is with or without hard labor, credit for all time served. . . ." The penalty for intimidation of a witness is a fine of not more than five thousand dollars or imprisonment "with or without hard labor" for not more than five years or both. La. R.S. 14:129.1. Because the trial court judge failed to specify whether Mr. Gauthier's sentence was to be served with hard labor or without hard labor, the sentence could be deemed to be indeterminate.[2] The trial court judge did specify, however, that the sentence was to be served in the custody of the Department of Corrections. Because La. R.S. *647 15:824(C) provides that "only individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Corrections," it is clear that the trial court judge intended to sentence Mr. Gauthier to hard labor. Therefore, we hereby amend Mr. Gauthier's sentence for the crime of intimidation of a witness to specify that the sentence is to be served at hard labor.

DISCUSSION
Mr. Gauthier has raised three assignments of error on appeal. First, he contends that the trial court judge erred in allowing him to represent himself. Second, he claims that there was insufficient evidence to convict him of intimidating a witness. Third, he argues that his sentences were excessive.
Assignment of Error Number 1: The trial court erred in allowing the defendant to both represent himself and proceed with a "not guilty by reason of insanity" plea, without minimally conducting an extensive colloquy into his ability to competently elect self-representation and whether he could competently represent himself.
In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court stated that the "Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." 422 U.S. at 807, 95 S.Ct. at 2527. The Supreme Court also determined that "[a]lthough not stated in the Amendment [the Sixth Amendment], in so many words, the right to self-representation  to make one's own defense personally  is thus necessarily implied by the structure of the Amendment." 422 U.S. at 819, 95 S.Ct. at 2533.
In the Faretta case, the Supreme Court also held that before an accused can represent himself in a criminal matter, the accused must knowingly and intelligently forego the benefits associated with the right to counsel. 422 U.S. at 835, 95 S.Ct. at 2541. The accused must be made aware of the dangers and disadvantages of self-representation, so that the record will establish that the accused knows what he is doing and his choice is made with his "eyes open." Id.
In Godinez v. Moran, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321(1993), the United States Supreme Court considered the issue of whether the competency standard for waiving the right to counsel is higher than the competency standard for standing trial. The Supreme Court found that a defendant who waives the right to the assistance of counsel need not be more competent than a defendant who does not, because "there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights." 509 U.S. at 399, 113 S.Ct. at 2686. The Supreme Court then made a distinction between the defendant's competence to waive the right to counsel and his competence to represent himself and held that the defendant's technical legal knowledge is irrelevant to the determination of whether the defendant is competent to waive his right to counsel. 509 U.S. at 400, 113 S.Ct. at 2687.
The Supreme Court in the Moran case also stated that finding the defendant to be competent to stand trial is not all that the trial court judge must do before a defendant may be permitted to waive his right to counsel. Id. The trial court must also "satisfy itself that the waiver of his constitutional rights is knowing and voluntary." Id.
*648 In Martinez v. Court of Appeal of California, Fourth Appellate District, 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000), the United States Supreme Court recognized the trial court's right to appoint "standby counsel" to assist a defendant in representing himself, even over the defendant's objection. 528 U.S. at 162, 120 S.Ct. at 691. The Supreme Court further recognized that standby counsel may participate in the trial proceedings, even without the defendant's express consent, as long as the participation by standby counsel does not seriously undermine the appearance to the jury that the defendant is representing himself. Id.
In Iowa v. Tovar, 541 U.S. 77, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004), the United States Supreme Court discussed the requirement that a defendant must make a knowing and intelligent waiver of his right to counsel before he will be permitted to represent himself. The Supreme Court stated:
We have not . . . prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding."
541 U.S. at 88, 124 S.Ct. at 1387. The Supreme Court also stated that the defendant should be made aware of the dangers and disadvantages of self-representation. 541 U.S. at 89, 124 S.Ct. at 1387. Finally, in Tovar the Supreme Court stated that "in a collateral attack on an uncounselled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." 541 U.S. at 92, 124 S.Ct. at 1390.
Both this Court and the Louisiana Supreme Court have considered the right of a defendant to represent himself. The Louisiana courts have cited the Faretta case and its progeny and their opinions.
In State v. Strain, 585 So.2d 540 (La. 1991), the Louisiana Supreme Court stated that in accepting a waiver of counsel at trial, the trial court judge should "advise the accused of the nature of the charges and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver." 358 So.2d at 542. See also State v. Sullivan, 97-1037, p. 7 (La.App. 4 Cir. 2/24/99), 729 So.2d 1101, 1105; State v. Mahogany, 96-1137, pp. 2-3 (La.App. 4 Cir. 4/30/97), 694 So.2d 505, 507. The Supreme Court in Strain further stated that "[w]hile the judge need not inquire into each and every factor stated . . . to establish a valid waiver of the right to counsel at trial, there must be a sufficient inquiry (preferably by an interchange with the accused that elicits more than `yes' and `no' responses) to establish on the record a knowing and intelligent waiver under the overall circumstances." 585 So.2d at 542.
In State v. Simmons, 05-1462 (La.3/17/06), 924 So.2d 137, the Louisiana Supreme Court reiterated that its decision in the Strain case did not establish a rigid set of criteria by which to determine whether a waiver of a defendant's right to counsel was knowing and intelligent. 05-1462 at pp. 1-2, 924 So.2d at 138. The Supreme Court declared that there was no formula or script that was required to be read to a defendant who elected to waive his right to counsel.
*649 In State v. Santos, 99-1897 (La.9/15/00), 770 So.2d 319, the Louisiana Supreme Court made it clear that when a defendant has made an unequivocal request to represent himself, the trial court judge is only required to determine whether the defendant is competent to waive his right to counsel and is doing so by exercising his informed free will. 99-1897 at pp. 2-3, 770 So.2d at 321. The judge is not required to determine whether the defendant will provide himself with competent representation, just that he is competent to waive his right to counsel. Id. See also State v. Rinehart, 544 So.2d 1281, 1285 (La.App. 4 Cir.1989), where this Court found the defendant competent to waive his right to counsel even though he contended that the trial court erred in failing to determine whether he was capable of representing himself rather than just determining that he was competent to waive the right to counsel.
In State v. Marts, 98-0099 (La.App. 4 Cir. 5/31/00), 765 So.2d 438, the defendant argued on appeal that his waiver of his right to counsel was not knowing and voluntary, because the trial judge did not ask him about his age, background, and education before permitting him to waive his right to counsel. He further claimed that he was not informed of the pitfalls of representing himself at trial. This Court found that the defendant had unequivocally declared that he wanted to represent himself. This Court then held that "[n]otwithstanding the trial court's failure to engage in a detailed colloquy regarding self-representation," the defendant made a knowing and valid waiver of his right to counsel. 98-0099 at p. 7, 765 So.2d at 442-43.
In the instant case, Mr. Gauthier was found competent to stand trial, and Mr. Gauthier has not contested that finding on appeal. Thus, under the applicable jurisprudence, Mr. Gauthier was also competent to waive his right to counsel. Nevertheless, we must also determine whether Mr. Gauthier waived his right to counsel knowingly and intelligently.
When Mr. Gauthier appeared for a pretrial hearing, the trial court engaged in the following colloquy:
THE COURT:
All right. Just a couple of housekeeping matters on this case. . . . You've been representing yourself pro se, with Ms. Marine sitting second chair. It's just for some reason not formally in the record. So, again, I would just like to do a minute entry for that. Mr. Gauthier you've made your appeal to the court for representation of yourself pro se again on the record for me.
THE DEFENDANT:
Yes, ma'am. I'd like to represent myself in this case of Trace [sic] Bouvier, State versus Jimmy Gauthier. I've had problems in obtaining the law books to go over and and [sic] preparing for this case. it [sic] was because I hadn't been in the computer as representing myself.
THE COURT:
All right. Let me just put this on the record. Mr. Gauthier, you understand that you are entitled to [sic] public defender to do all of the representation for you?
THE DEFENDANT:
Yes, ma'am, I understand.
THE COURT:
And it's your wish  Ms. Marine has been assisting you in sitting quote, "second chair", to you and you're fine with that arrangement?
THE DEFENDANT
She's doing wonderful. And I appreciate it very much.
THE COURT:

*650 We will put in the court record that you are counsel for yourself. That you are representing yourself pro se with Ms. Marine from the Public Defenders Office assisting you. So, that will help you get access to the legal references that you need in the back.
After the colloquy, there was a discussion between Mr. Gauthier's court appointed counsel and the trial court judge regarding counsel's plan to provide a copy of her file to Mr. Gauthier. As the trial judge noted, there was nothing in the record prior to the pretrial hearing to show that Mr. Gauthier was representing himself.[3] The colloquy quoted above was the first indication in the record of Mr. Gauthier's desire to represent himself.
A second colloquy that occurred the day before Mr. Gauthier's trial is also in the record. The trial court judge asked Mr. Gauthier whether he had been given an opportunity to consult with the court appointed counsel and whether he wanted to be tried by a jury or by the judge. Mr. Gauthier said that he wanted a trial by jury, and he confirmed that he had been given an opportunity to consult with counsel regarding whether to choose a judge or jury trial.
Mr. Gauthier had been charged in another case with stalking, and the trial court judge further advised Mr. Gauthier that because he had a right to a trial by jury with regard to the stalking charge, that charge could be tried with the instant case before a single jury. The attorney who had been appointed to represent Mr. Gauthier responded to the judge by saying that because the two cases had not been consolidated and because Mr. Gauthier was representing himself in both cases, she thought the cases should be tried separately. Mr. Gauthier then told the court that he agreed that the cases should be tried separately and that the decision to try the cases separately was his decision. The State concurred in that decision.
At the beginning of the trial, the trial court judge discussed with Mr. Gauthier his decision to represent himself at the trial. The colloquy that occurred is as follows:
THE COURT:
Mr. Gauthier, we really didn't get into the representation issue yesterday. I'd like to address that now. Again, it is your right to represent yourself pro se. I know that you have prepared yourself to represent yourself. I would like to again caution you, advise you, whatever the word would be, you have a very very good Public Defender that's here to represent you. I know you all have been working well together. I would just again ask you to consider letting Ms. Marine handle this case for you completely as opposed to representing yourself in front of a jury. She is an exceptional lawyer. I'm not trying to 
THE DEFENDANT:
I know.
THE COURT:
 persuade you otherwise, but it's something that I really want to make sure on the record that you have considered, that you have weighed, the advantages to having someone who is trained to do this. And who does it everyday in front of juries and in front of Judges, represent those that are accused of crimes.
THE DEFENDANT:

*651 I understand, your Honor, I do. I'm  I got a lot of help. I have a lot of good help right now. She's doing a real good job with that. I'm ready to move on.
THE COURT:
All right. You still wish to represent yourself?
THE DEFENDANT:
Yes, your Honor.
THE COURT:
You have conceded that Ms. Marine is going to select the jury. Jury selection.
THE DEFENDANT:
Yes, your Honor.
THE COURT:
Mr. Gauthier, again, you have always shown respect to the Court, your questions are not irrelevant for the most part, on what you are suppose [sic] to be doing. I am again going to caution you though if you start to testify during your questioning or if your questioning becomes more of you making a case rather than what the purpose of that is, . . . or if you start to, you know, not be able to follow the rules of criminal procedure, I will ask Ms. Marine to at that point step in and assume representation. . . .
THE DEFENDANT:
Thank you, your Honor. I appreciate that.
Although none of the colloquies covered matters such as Mr. Gauthier's education, age, or experience or the nature of the charges against him and the range of penalties for the charges, it is clear from the record that Mr. Gauthier was well aware of his right to have counsel represent him. Additionally, he had voluntarily chosen to represent himself, even though he was pleased with the assistance he had received from his court appointed counsel. Further, the record reflects that the trial court judge clearly warned him of the dangers and pitfalls of representing himself at trial.
Although the trial judge did not specifically inquire about Mr. Gauthier's educational level and experience, the trial judge had gleaned information about Mr. Gauthier prior to the trial. She had observed Mr. Gauthier conduct the questioning of one of the members of the sanity commission in a pretrial hearing. Additionally, she had heard the testimony of the witnesses at both the competency and sanity hearings, and the testimony indicated that Mr. Gauthier was intelligent and "fairly articulate."
From her pretrial observations of Mr. Gauthier, the trial judge could determine that Mr. Gauthier was articulate, that he generally asked relevant questions, that he was respectful in court, and that he was intelligent. Also, he stated in a pretrial hearing that he needed to use the law library at the prison, indicating that he was aware of the procedures followed in the criminal justice system and that he was not a stranger to the system. Additionally, Mr. Gauthier's questioning of one of the members of the sanity commission at the pretrial hearing clearly showed that he was well aware of the nature of his plea of not guilty by reason of insanity. Not only did Mr. Gauthier question the witness regarding the bizarre behavior that he exhibited when he was arrested, he also asked questions designed to question the validity of his sanity evaluation. For example, he asked whether a report stating that "I have an extremely elevated level of paranoia and I may be delusional at times" had been reviewed by the witness. Based on her observations, the trial judge had sufficient evidence that Mr. Gauthier knowingly waived his right to counsel and was competent to do so.
*652 The face of the record in this case confirms that the trial court judge was correct in determining that Mr. Gauthier was sufficiently articulate and intelligent to knowingly and voluntarily waive his right to counsel. For example, the record contains copies of letters that he wrote that demonstrate that he was quite literate, and the record contains handwritten notes of relevant and considered questions that he wanted to ask the witnesses at his trial. Additionally, Mr. Gauthier relied on his court appointed counsel to conduct the selection of the jury, to raise evidentiary objections, and to conduct the questioning of the victim.
Based on the foregoing, we find that Mr. Gauthier made a voluntary, knowing, and intelligent waiver of his right to counsel. This assignment of error is without merit.
Assignment of Error No. 2: The State failed to prove the defendant guilty of intimidation of a witness beyond a reasonable doubt.
Mr. Gauthier asserts that the evidence against him was insufficient to support a finding that he intimidated Ms. Bouvier, who was both the victim and a witness in this case. The Louisiana Supreme Court, in considering the issue of the sufficiency of evidence necessary to support a criminal conviction, has held that appellate courts in Louisiana are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See, e.g., State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18; State v. Mussall, 523 So.2d 1305, 1309 (La.1988).
In the Jackson case, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, creates the following standard of review for federal courts reviewing a state conviction:
[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
443 U.S. at 318-19, 99 S.Ct. 2781 at 2788-89 (footnote omitted) (citation omitted).
In the Mussall case, the Louisiana Supreme Court stated that "this court . . . recognized that . . . the Jackson holding also applies to state direct review of criminal convictions. . . ." 523 So.2d at 1309. The Supreme Court also recognized that the Louisiana Constitution has a due process clause "virtually identical to its Fourteenth Amendment model. La. Const., Art. I, § 2." Id.
The Supreme Court in Mussall held that a review of the record in a criminal case does not require the reviewing court to determine whether the reviewing court believes the evidence at the trial established guilt beyond a reasonable doubt. The Supreme Court said:
[A] reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. . . . [T]he inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.
523 So.2d at 1309-10 (footnotes omitted).
In State v. Williams, 05-0459 (La. App. 4 Cir. 1/18/06), 925 So.2d 567, this Court articulated the standard of review *653 that is applicable to a claim that the evidence produced at a criminal trial was constitutionally insufficient to support a conviction. This Court stated:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt."
925 So.2d at 575, quoting State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657. See also State v. Sykes, 04-0947, 04-1199, pp. 6-7 (La.App. 4 Cir. 3/9/05), 900 So.2d 156, 161.
In the instant case, Mr. Gauthier was charged with intimidating a witness in violation of La. R.S. 14:129.1, which reads in relevant part as follows:
No person shall intentionally:
(a) Intimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force or force, a witness with intent to influence his testimony, his reporting of criminal conduct or his appearance at a judicial proceeding;
La. R.S. 14:129.1 defines the term "witness" to include a person who is a victim of criminal conduct, a person who has testified in court under oath, a person who has reported a crime, and a person who has been served with a court subpoena.
The evidence that was introduced at trial to support the charge of intimidating a witness against Mr. Gauthier consisted of excerpts of letters he wrote to Ms. Bouvier after his arrest. Additionally, Ms. Bouvier testified regarding oral threats Mr. Gauthier had made to her regarding what would happen to her if she reported to the police the beatings he had inflicted upon her.
Ms. Bouvier testified that Mr. Gauthier had told her numerous times that he would kill her if she reported his abuse to the police. Ms. Bouvier also testified that when she was making noise while Mr. Gauthier was beating her, he told her that if the neighbors called the police, "then by the time they would have came [sic] in there would have been nothing left of me."
At trial letters authored by Mr. Gauthier that were introduced into evidence contained threats and manifested anger toward Ms. Bouvier. It is clear from the text of the letters that Mr. Gauthier intimidated Ms. Bouvier by threat of force regarding her potential testimony at his trial on the battery charge. Although in the letters Mr. Gauthier did profess his deep love for Ms. Bouvier and apologize profusely for the beating he admitted administering to her, he also threatened her in the letters.
At trial Ms. Bouvier read the following excerpt from one of the letters that Mr. Gauthier wrote to her while he was in jail:
Damn, you, Ms. Bouvier. . . . I am ready to kiss you passionately then ring your fucking neck. What the hell is wrong with you? Did you fuck the devil while I was at work or just those cops or even a lawyer and the judge. Probably all of them at the same time. . . . If you want me to want to kill you, you've done it. It won't bring me any pleasure to do it, but it's becoming necessary. I hope you do change your ways. But if you don't I hope you are beaten, raped, then killed. . . . I still love you. But it won't stop me from killing you if you don't start showing some compassion for the things you are doing to me. You are so *654 self righteous, aren't you? There is a special place in hell for you and I'll put you there if you don't change. I'm not scared of any charges, bitch. I am in here for life. Your intimidation charges are going to be murder charges soon. Fuck the pain our children are going to feel. . . . I'll be doing them a favor by killing you. . . .
In other letters, Mr. Gauthier threatened to cut off Ms. Bouvier's head, talked about escaping from jail and finding Ms. Bouvier, and stated that Ms. Bouvier would be "nuts from all the funerals you'll be going to, if you don't attempt to right your wrongs." One of Mr. Gauthier's letters also said that "I could have hurt you a 1000xs over, or your family, all arrangements are already made." In yet another letter, Mr. Gauthier admitted that he had threatened Ms. Bouvier and expressed remorse for what he had done. Mr. Gauthier also wrote that "[y]ou have gone too far Tracy, you'll pay for it, trust me."
In a chilling excerpt from a letter that Ms. Bouvier read at trial, Mr. Gauthier said:
So now you are a target. You always will be now unless you make a few changes in yourself. . . . After three months have past [sic] you will bring or [sic] children to see me for a very civilized visit. If not people in your life will start disappearing. This is no joke. . . . So quit fucking with the D.A. and do the right thing. . . . But now you are the evil bitch that needs to be put in check. And believe me you are going to be. Enough of the right people already know how to find you, where to find you and your parents. And believe me it's hard to prevent things from happening right now. So you should try to be the sweet woman you pretend to be. Understand this, Tracy, and understand it well, I can reach you or them easily.
In one letter that Mr. Gauthier wrote to Ms. Bouvier, he even explained that he had spoken with someone in jail who had experienced problems with his wife and that this person had explained to him "what is going to happen and how it could go if you were serious about not pressing charges on me." Mr. Gauthier suggested to Ms. Bouvier that "if you want, tell the judge we argued, things got out of hand and that you don't want to press charges, that the D.A. is pushing it." Mr. Gauthier then explained that "[t]he judge would at that time dismiss the case." In another letter, Mr. Gauthier told Ms. Bouvier that for him to avoid a lengthy prison sentence, "you have to fill out an affidavit stating that you don't want your statement you gave at the police station to be used against me." Additionally, Mr. Gauthier said that if the State still insisted on prosecuting him, he needed Ms. Bouvier to "testify that I didn't intend to hurt you and that you never cried or told me to stop when it was happening."
Based on the record we find that the evidence to support Mr. Gauthier's conviction for intimidating a witness is not only sufficient, it is also overwhelming. Clearly, any rational trier of fact viewing the evidence would have found the essential elements of the crime of intimidating a witness beyond a reasonable doubt. This assignment of error has no merit.
Assignment of Error No. 3: The trial court erred in imposing the maximum sentence which is unconstitutionally excessive under the circumstances.
Mr. Gauthier argues in this assignment of error that the trial court judge imposed sentences that were excessive. He also asserts that the judge failed to give sufficient reasons for imposing the maximum sentence in connection with his conviction for intimidating a witness.
*655 The United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. The Louisiana Constitution expressly provides that "[n]o law shall subject any person to cruel, excessive, or unusual punishment." La. Const. art. 1, § 20.
In State v. Baxley, 94-2982, pp. 4-5 (La.5/22/95), 656 So.2d 973, 977, the Louisiana Supreme Court stated that the deliberate inclusion of the prohibition against excessive sentences in the state constitution by its redactors imposed on the court the duty to review the sentencing provisions of criminal statutes. The Supreme Court further stated that the court is permitted to determine both whether the statutory range of sentences and the sentence of a particular offender is excessive, even if that offender's sentence is within the prescribed statutory range. Id.
In State v. Bonanno, 384 So.2d 355 (La.1980), the Louisiana Supreme Court discussed the criteria for determining whether a sentence is unconstitutionally excessive as follows:
[T]o determine whether a certain penalty is excessive we must determine whether that penalty is grossly disproportionate to the severity of the crime. To determine whether the penalty is grossly disproportionate to the crime we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice.
384 So.2d at 358 (citations omitted).
In State v. Soco, 441 So.2d 719 (La.1983), the Supreme Court also stated that "[m]aximum sentences provided by the statutes are reserved for the `worst kind of offender'." Id. at 720, citing State v. Quebedeaux, 424 So.2d 1009, 1014 (La. 1982). The Supreme Court further stated:
In order for there to be proper review of the sentence to determine its constitutionality, La. Const. art. 1, § 20, that is, whether the defendant is the worst kind of offender, an adequate record specifying the basis for the sentence must be made. This record is mandated by La. C.Cr.P. 894.1, which also provides the sentencing judge with guidelines to follow when passing sentence.
Id.
The Supreme Court has also stated that "[i]f the judge records the factors affecting his sentencing decision, the sentence should not be set aside as excessive unless it is grossly disproportionate to the offense or represents nothing more than the needless infliction of pain and suffering." State v. Pike, 426 So.2d 1329, 1335 (La.1983). Finally, in an appellate review of a sentence "the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion." State v. Smith, 01-2574, pp. 6-7 (La.1/14/03), 839 So.2d 1, 4.
In the instant case, in imposing Mr. Gauthier's sentences, the trial court considered a pre-sentence investigation report and the testimony given at the sentencing hearing by both Ms. Bouvier and Mr. Gauthier. The pre-sentence report reflected prior encounters with the criminal justice system, and Ms. Bouvier's testimony revealed an ongoing fear of retaliation from Mr. Gauthier.
Ms. Bouvier testified that at the time of the sentencing hearing she remained afraid of Mr. Gauthier and believed that he would hurt her after his release from prison. She stated that she thought that he would wait a while after his release to harm her, "because he knows that if anything *656 was [sic] to happen to me right away that they'll automatically know that it was him." Nevertheless, she was convinced that "one day" he would harm her. Ms. Bouvier's testimony demonstrates that Mr. Gauthier's actions resulted in her fearing for her safety well into the future.
Mr. Gauthier spoke on his own behalf at the sentencing hearing. He challenged the reports of prior instances of domestic abuse that he had perpetrated against Ms. Bouvier by arguing that there was no proof of these events in the form of hospital records or statements from third party witnesses. He also stated that if he had abused Ms. Gauthier "prior to this bruising on her arm, then she would have left me much sooner." Clearly, Mr. Gauthier was oblivious to the fact that Ms. Bouvier was so afraid of his retaliation that fear prevented her from leaving him sooner. Mr. Gauthier also alluded to a civil custody proceeding in which the judge imposed a thirty-six month contempt sentence on him for his repeated violations of a restraining order. Additionally, Mr. Gauthier attempted to shift blame for his attack on Ms. Bouvier to her. Finally, he claimed that all her actions in pursuing criminal charges against him were motivated by "vindictiveness" and that she never believed his threats that he would kill her.
Mr. Gauthier also testified regarding mitigating circumstances in an attempt to persuade the trial court to impose a more lenient sentence. He said that his grandfather was ill and that his family hoped that he would be released from prison before his grandfather died. Also, Mr. Gauthier stated that his father was willing to assist him with finding a condominium where he could live and with obtaining a truck upon his release from prison. Yet, he also stated that he might even consider reconciling with Ms. Bouvier, indicating that he failed to grasp the devastating effect that his crimes had on Ms. Bouvier.
In imposing the maximum sentences on Mr. Gauthier, the trial court judge stated that she had considered the sentencing guidelines in La.C.Cr.P. art. 894.1 and that she had determined that any lesser sentences would "certainly deprecate the seriousness of the offense." The trial court judge also considered Mr. Gauthier's criminal history that was included in the presentence investigation report.
The trial judge further stated that Mr. Gauthier needed correctional treatment and that there was an undue risk that he would commit another crime if he were given a suspended sentence or probation. In sentencing Mr. Gauthier, the trial judge took "into account the certain element of potential harm and actual threats of, or actual violence used in the commission of the offense." The judge further stated that the threats had included repeated letters in which Mr. Gauthier had detailed his "intentions of future harm to the victim in this matter."
Based on the testimony of both Mr. Gauthier and Mr. Bouvier at the sentencing hearing and the threatening letters that he wrote to her, the trial court judge did not abuse her discretion in imposing the maximum sentences on Mr. Gauthier for his crimes. We also note that Mr. Gauthier's comments at the sentencing hearing reflected that he failed to comprehend the seriousness of the crimes he had committed. For example, he referred to the violent beating he had administered to Ms. Bouvier as "this bruising on her arm."
Mr. Gauthier's sentences were not unconstitutionally excessive. This assignment of error is without merit.

CONCLUSION
Mr. Gauthier's assignments of error are without merit. His sentence, as amended *657 in this opinion, and his conviction are hereby affirmed.
CONVICTION AFFIRMED AND SENTENCE, AS AMENDED, AFFIRMED.
NOTES
[1] Mr. Gauthier was charged in the bill of information with second degree battery, however.
[2] La.C.Cr.P. art. 879 requires all prison sentences to be determinate.
[3] An attorney was present with Mr. Gauthier at the competency hearing, and he assisted Mr. Gauthier in representing himself when Mr. Gauthier entered his plea of not guilty and not guilty by reason of insanity. A different attorney, who assisted Mr. Gauthier at trial, was later permanently assigned to Mr. Gauthier's case.