607 So.2d 910 (1992)
STATE of Louisiana
v.
Reginald TYLER.
No. 24244-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
Writ Denied February 11, 1993.
*911 Wellborn Jack, Jr., Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., H. Ted Cox, Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN, C.J., and LINDSAY and BROWN, JJ.
MARVIN, Chief Judge.
After having been adjudicated as a third-felony offender and sentenced to 25 years at hard labor following his conviction by a jury of distribution of cocaine, Reginald Tyler appeals his conviction. In six assignments which arise out of his borderline mentality as a chronic paranoid schizophrenic, he contends that his conviction and adjudication should be reversed because he was not competent to proceed in either case or to waive his presence. His trial attorney raised Tyler's incompetency to proceed after he was convicted, but before sentence.
Tyler's appellate counsel asserts that because of the trial court's rulings or procedures in response to Tyler's erratic conduct, Tyler was deprived of due process, of participation in jury selection, and of his right to a mistrial. Tyler does not contest the facts upon which he was convicted (selling two $20 bags of cocaine) or complain of the 25-year sentence.
We affirm.

FACTS
Tyler sold the cocaine June 21, 1991. He was convicted of this crime on August 19, 1991. After a hearing on August 23, 1991, he was adjudicated an habitual offender, having been convicted on October 12, 1990, of aggravated battery, and on April 12, 1985, of attempted simple burglary.
After a sanity commission was appointed and a hearing held on his trial counsel's motion, he was adjudged competent to proceed and was sentenced on January 23, 1992.
The record contains the reports and the testimony of the three psychiatrists on the sanity commission who separately saw Tyler at different times in late 1991.
Dr. Ware reported that Tyler suffered from "serious psychiatric disease," but
does adequately understand the charges against him and ... that he was found guilty by a jury. He appeared to be aware of his actions at the time of his arrest and, in my opinion, now can assist his attorney in defending him and [he] understands the process of the court and the law. I do think his significant mental illness should be considered in the sentencing phase.
Noting Tyler's "long history of Chronic Paranoid Schizophrenia," Dr. Robinson reported him as
well oriented, ... excellent memory ... no cognitive impairments other than the trouble concentrating secondary to his psychotic illness. * * * He is so delusional... I ... doubt ... he understands the difference between right and wrong at times ... [His] considerable impairment... probably has an adverse affect on his ability to maintain a consistent defense, listen to testimony of wittnesses (sic), make simple decisions or testifying (sic) ... in his own defense.
Dr. Robinson had interviewed Tyler in the spring of 1990 for a sanity evaluation in connection with the October 12, 1990, charges against Tyler, before interviewing him again in October 1991. Dr. Robinson declined to express his opinion on whether Tyler was competent to proceed when he was tried in August 1991.
Dr. Leatherman, the third psychiatrist on the commission, confirmed Tyler's chronic mental condition, adding that the presence of "moderately severe Substance Abuse Disorder (primarily cocaine) certainly does [a]ffect his behavior, his actions, and his thinking processes." Dr. Leatherman opined that Tyler is able to understand the charges against him and the charges he has been found guilty of, as well as the range and extent of possible penalties. "I *912 ... believe he can cooperate with his attorney and aid in his defense. He appears competent at this time to assist his counsel." From his late 1991 interview, Dr. Leatherman believed Tyler understood his actions and knew right from wrong at the time of the offense, but declined to express whether Tyler was competent to proceed during his August 1991 trial because he had "no information about his mental state at that time."

TYLER'S CONDUCT BEFORE THE JURY PANEL
At noon recess during the trial and outside the presence of jurors, the trial court correctly summarized, in our opinion, what occurred when voir dire began that morning:
... Also for the record while the jury venire is out I want to point out that for the most part Reginald Tyler, the defendant, has been out of the courtroom during the voir dire process of this first panel. The lawyers interviewed twelve citizens on this first round of voir dire. Mr. Tyler, early on in the proceedings was, in the view of the Court, extremely obstreperous on two occasions. Both occasions were in front of the jury venire. On the first occasion I admonished Mr. Tyler not to interrupt and not to obstruct the proceedings. He was hostile in his voice tone and he was hostile in his demeanor. I admonished him. He told me to call him "dude." I told him I would call him Mr. Tyler. His physical actions concerned me at that point.
Then on the second occasion the Assistant District Attorney was in the process of asking the questions of the first panel of twelve veniremen when Mr. Tyler interrupted him loudly. He waived his arms and again acted in the view of the Court inappropriately by saying various things the record and the tape recordings of these proceedings will accurately reflect the content of what Mr. Tyler said. I can say that his demeanor was inappropriate. I can also say that I was concerned about the physical safety of the people in the courtroom including the Assistant District Attorney and the defense lawyer as well as the citizens in this courtroom. Also Mr. Tyler actually stated to the effect that we should pick the jury outside of his presence, at which point I requested that the deputy sheriff escort him back to jail where he has been awaiting trial.
I want all that to be clear on the record in the event of a conviction and an appeal and an assignment of error in that respect. I want the record to accurately reflect what the Court viewed as well as what was actually the content of Mr. Tyler's statements.
Anything to add to that Mr. McDonald (defense counsel) or Mr. Cox (prosecutor)? [Both attorneys answered "No, Sir."]
When jury selection was completed on the afternoon of the trial, the fact of Tyler's removal from the courtroom that morning was again mentioned in this discourse with Tyler and his counsel, the jury being excused:
THE COURT: ... finally I want to say that Mr. Tyler was removed from the court earlier today based on what I believed to be obstreperous behavior. Mr. McDonald have you had a chance to visit with him about his situation?
THE DEFENDANT: Excuse me, Your Honor, I did ask to leave. You didn't have to tell me that.
THE COURT: Right. I understand and the record should reflect that Mr. Tyler asked to be removed from the courtroom earlier today. That's correct Mr. Tyler.
THE DEFENDANT: Thank you.
THE COURT: All right. Mr. McDonald, have you had an opportunity to discuss this matter with Mr. Tyler?
MR. McDONALD: Yes, I believe he understands.
THE COURT: Let me just say for the record Mr. Tyler, this is your trial and you will be entitled to give testimony. Should you desire to give testimony you will do it from this witness stand. You won't do it from sitting over there in your seat waving your arms and interrupting the proceedings and acting obstreperous. *913 I want to be very clear that if you continue to do that and act as you have acted so far, I will remove you from the courtroom and you can just sit upstairs and think about what may be going on in this courtroom, do you follow me?
THE DEFENDANT: Yes, sir.
THE COURT: All right, sir. Bring the jury in.

TYLER'S LATER CONDUCT
At the habitual offender hearing, Tyler's counsel and Tyler effectively admitted Tyler was the same person who had previous convictions in two felonies. After additional preliminary questions to Tyler, the court further inquired:
THE COURT: You understand that first of all are you admitting that you are a third felony offender, that is, are you admitting that there are two
THE DEFENDANT: No.
THE COURT: You are not?
THE DEFENDANT: No.
THE COURT: You are not pleading guilty?
THE DEFENDANT: No.
MR. COX: Let me get my fingerprint technician. I just released him.
THE COURT: All right, sir.
THE DEFENDANT: Not if I pled guilty. I was accused. They came to me with a deal to get out of jail. That's the only reason I pled guilty.
THE COURT: All right, sir. We will have a hearing.
(Whereupon a brief off-the-record discussion was held.)
THE COURT: Proceed.
THE WITNESS: I need his prints.
THE DEFENDANT: I'm already under arrest, you've got to re-arrest me on this shit. I know the law.
MR. COX: He needs to sit down so he can get his fingerprints.
THE DEFENDANT: Why I can't? I'm not a fingerprint. I don't have no fingerprint expert on my side. This is forcible fingerprints. Is this on the speaker?
MR. COX: Your Honor, I will note for the record that he doesn't have the right not to give his fingerprints.
THE DEFENDANT: I don't have any rights, you are damn right. He is bearing his firearm.
THE COURT: Mr. Tyler, let me advise you
THE DEFENDANT: No, don't advise me. He is acting like he is going to fight me. You better uncuff my hands now or blood will be spilt in this m_____ f_____.
MR. COX: Your Honor, I suggest they take him upstairs and get his fingerprints and then come back down.
THE DEFENDANT: You're damn right.
THE COURT: All right, Mr. Sheriff, it will be the order of the Court
THE DEFENDANT: You are disrespecting your woman, f___ you, I will too.
THE COURT: Mrs. Higginbotham, I hope you get every word of that down. Mr. Tyler wait one minute.
THE DEFENDANT: Am I going upstairs or what, yo-yo?
THE COURT: You keep talking
THE DEFENDANT: I'm talking.
THE COURT: I want you to get everything down Ms. Higginbotham. Let me advise you
THE DEFENDANT: Don't advise me of nothing. I'll see you in my day of court. This ain't my day of court. Now I'm being restrained by two officers with their revolvers exposed.
THE COURT: You need to be restrained.
THE DEFENDANT: In the United States of America. Where are the flags of America in this goddamn courtroom?
THE COURT: It will be the order of the Court that Mr. Tyler be restrained to the extent necessary to get his fingerprints. Take him upstairs.
THE DEFENDANT: I will go on and give them.
THE COURT: No, you go upstairs.
THE DEFENDANT: I'll give them, come on.
After a brief recess during which Tyler was fingerprinted, the hearing was held with Tyler and his counsel present.

*914 CAPACITY TO PROCEED; TIMELINESS OF MOTION
We shall assume, without squarely considering or finding, that Tyler's motion to raise his capacity to proceed during and after his trial, filed after conviction, but before sentence, was timely. See CCrP Art. 642 and compare State v. Jones, 368 So.2d 1023 (La.1979); State v. Gunter, 23 So.2d 305 (La.1945); State v. Clark, 367 So.2d 311 (La.1979); and State v. Lott, 574 So.2d 417 (La.App. 2d Cir.1991).

BURDEN OF PROOF
Tyler had the burden of establishing his incapacity. Opinion evidence, of course, may be solicited and heard, but the determination of competency is the ultimate and sole responsibility of the court. State v. Brooks, 541 So.2d 801 (La.1989); State v. Narcisse, 426 So.2d 118 (La 1983).
We find no error in assignments one and two which assert that Tyler was not competent either to proceed to trial or at the habitual offender hearing.

OTHER ASSIGNMENTS
The statement by Tyler's appellate counsel that no one connected with the trial was aware of Tyler's chronic mental illness subtlely assumes that his counsel and the prosecutor did not know of Tyler's past experience with sanity examinations or with criminal charges. We do not make that assumption on this record. This record reflects that Tyler was present in court on several occasions, even for a preliminary examination before the trial date. The record shows that Tyler conferred with counsel and remained in the courtroom after the jury was selected, through the verdict, with his counsel. The record also shows that Tyler was present with counsel during the habitual offender hearing.
Neither Tyler nor his counsel objected to Tyler's absence during the jury selection. Before recessing for lunch on the day of the trial, this conversation occurred after the jurors were excused.
THE COURT: [addressing defense counsel]... do you feel that Mr. Tyler can be brought back down at one-thirty and could behave himself ...?
MR. MCDONALD: I think it may be best that we pick the entire jury. * * * I think it would probably be in his best interests that we do it this way. I feel I've been able to at least regain a little something from the jury and I think him being back here would just destroy what I've been able to regain.
After the jury was selected and Tyler was present, he disagreed with the trial court's statement that Tyler was "removed from the court[room] that morning." Tyler told the court, "... I did ask to leave. You didn't have to tell me that." The record further shows that his counsel acknowledged that he had discussed "this matter" with Tyler and "believe[s Tyler] understands." After further remarks by the court, the jury returned and the trial proceeded.
Any irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. CCrP Art. 841. Moreover, Tyler, being tried on a non-capital felony, cannot object to his temporary voluntary absence during jury selection, when, as here, his counsel was present. CCrP Art. 832. Compare Arts. 831 and 551.
Tyler's remaining assignment suggests that the court should have declared a mistrial on its own motion when Tyler "engaged in prejudicial conduct in the presence of the jury." Our emphasis. "Upon motion of a defendant, a mistrial shall be ordered when prejudicial conduct in ... the courtroom makes it impossible for the defendant to obtain a fair trial ..." CCrP Art. 775. Also our emphasis.
Even if Tyler's counsel had moved for a mistrial, it would not have availed Tyler. A defendant cannot complain that prejudicial conduct requires a mistrial when the alleged prejudice stems from the defendant's own obstructive conduct which, as here, is met by a reasoned and ordered reaction by the trial court to maintain orderly procedure. State v. Lucas, 482 So.2d *915 7 (La.App. 1st Cir.1985); State v. Shank, 448 So.2d 654 (La.1984).

DECREE
We find no error patent. Tyler's conviction and adjudication are AFFIRMED.