978 So.2d 1161 (2008)
STATE of Louisiana
v.
Jimmy D. GAUTHIER, Jr.
No. 2007-KA-0743.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 2008.
Rehearing Denied April 9, 2008.
Eddie J. Jordan, Jr., District Attorney, Battle Bell IV, Assistant District Attorney, New Orleans, LA, for Appellee.
*1163 Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES and Judge EDWIN A. LOMBARD).
JOAN BERNARD ARMSTRONG, Chief Judge.
On June 24, 2003 the State filed a bill of information charging the defendant-appellant with one count of second degree battery, a violation of La. R.S. 14:34.1, and one count of intimidation of a witness, a violation of La. R.S. 14:129.1. Although the defendant originally entered a plea of not guilty, he changed that plea to a dual one of not guilty and not guilty by reason of insanity. He was found competent to stand trial after a hearing. He was subsequently found competent to represent himself.
Trial was conducted on January 13, 2005 before a six-person jury. At the conclusion of the trial the jury found the defendant guilty of the responsive verdict of simple battery, a violation of La. R.S. 14:34, as to the first count and guilty as charged on the second count. On April 4, 2005 following a sentencing hearing, the court sentenced the defendant on count one to six months in parish prison and on the second count to five years in the Department of Corrections, with or without hard labor. The court ordered that the sentences run concurrently. The defense filed a motion to reconsider sentence which was denied and a motion for appeal which was granted. The conviction was affirmed, and the sentence was amended and affirmed as amended. State v. Gauthier, XXXX-XXXX (La.App. 4 Cir. 9/27/06), 941 So.2d 642.
On June 13, 2005 the State filed a multiple bill charging the defendant as a second offender. A hearing was set for August 26, 2005, but it was continued on motion for the State. Hurricane Katrina's devastation resulted in the inability of the court to hear the matter as scheduled in September. On February 3, 2006 a set sheet resulted in the hearing being scheduled for April 28, 2006. The defendant was not brought to court for the next two hearing dates, and after being released from custody, did not appear for a status hearing on September 12, 2006. An alias capias for his arrest was issued.
Hearings set for December 15, 2006, January 11, 2007, and January 17, 2007 did not go forward, although the defendant had been returned to custody. The defendant finally appeared on February 2, 2007, at which time the defense was granted a continuance. The minute entry for February 2, 2007, reflects that the court set a lunacy hearing for February 15, 2007. The lunacy hearing was then reset several times, until the minute entry of March 13, 2007 fixes March 29, 2007, as the date for both the multiple bill hearing and the lunacy hearing. However, the minute entry of March 29, 2007, notes the continuance of the multiple hearing to April 2, 2007, but no mention is made of the lunacy hearing. On April 2, 2007, the defendant appeared. The court denied the defendant's motion to quash the multiple bill, heard testimony, and then found that the defendant was a second offender. The court vacated the original sentence and resentenced him to serve seven and one-half years at hard labor. The court denied the defendant's oral motion to reconsider sentence. The court granted the motion for an appeal. But there is no reference to the defendant's competency or to a lunacy hearing.
The facts of this case were set forth at length in this Court's appeal opinion rendered *1164 in conjunction with the appeal of the defendants' conviction:
Tracy Bouvier, the victim in this case, testified that Mr. Gauthier had been her "boyfriend" for twelve years and that he was the father of her children. She then testified regarding the incident that led to the charges against Mr. Gauthier. She said that she had awakened Mr. Gauthier so that he could get ready to go to work. When she woke him, he started accusing her of being unfaithful to him. When she denied that she had been unfaithful, Mr. Gauthier started "punching" her. She explained that the more she denied being unfaithful, the more Mr. Gauthier hit her. He hit her intermittently for about two hours. Ms. Bouvier stated that Mr. Gauthier hit her with his closed fist on both of her arms, both of her legs, and on her back. Only when Mr. Gauthier realized that he was late for work did he stop hitting Ms. Bouvier and leave to go to his place of employment.
Ms. Bouvier said that she did not call the police immediately after she was beaten, because she was scared. When she was being beaten and "got kind of loud at one point," Mr. Gauthier told her "to shutup [sic] and be quiet because if the neighbors would have came [sic] to the door, if they would have called the police, then by the time they would have came [sic] in there would have been nothing left of me." Ms. Bouvier also testified that "[n]umerous times he told [me] if I ever went to the police, or if I ever tried to leave him, that he would kill me."
Ms. Bouvier then said that she reported the beating to the police the next day because of her son's reaction when he saw one of the bruises on her arm. Her young son was very upset and said, "That's it. We are going to call the police." Ms. Bouvier and her children then traveled to the police station by bus, and she reported the beating.
Although Ms. Bouvier had difficulty walking after the beating, that problem resolved itself, but the pain in her left arm persisted. She testified that approximately ten days after the beating, it was still painful for her to move her left arm. Additionally, her arm had lumps on it, and she could not pick up anything. Therefore, she sought medical treatment at that time.
Ms. Bouvier also said that she had received approximately sixty letters from Mr. Gauthier that he sent to her while he was incarcerated. Most of the letters were sent during the first month that Mr. Gauthier was in jail. At trial Ms. Bouvier identified the letters and read a number of excerpts from them. In the letters, Mr. Gauthier both threatened her and professed his love for her.
New Orleans Police Department Detective Dira Godchaux, an officer trained to handle domestic abuse cases, also testified at the trial. She said that she met with Ms. Bouvier after she arrived at the police station to report the beating. Detective Godchaux stated that Ms. Bouvier was crying, that she appeared to be afraid, and that she had extensive bruising on her arms, her upper thigh, and her back. Also, the bruised areas were swollen. It appeared that Ms. Bouvier's muscles were sore, because Ms. Bouvier had difficulty walking. Detective Godchaux also testified that Ms. Bouvier stated to her that Mr. Gauthier had said that he would kill Ms. Bouvier if she reported the beating to the police. Additionally, Ms. Bouvier reported that there had been prior incidents of domestic violence but that she had not reported them to the police.

*1165 Although Ms. Bouvier never told Detective Godchaux that Mr. Gauthier was armed with a weapon while he was beating Ms. Bouvier, the detective had him arrested for aggravated battery.[1] Detective Godchaux also testified that when he was taken to the police station, Mr. Gauthier acted in an uncontrollable manner. He struck his head against the wall, and he was screaming obscenities. Dr. Raphael Salcedo, a member of the sanity and competency commissions that examined Mr. Gauthier, was called as a witness by Mr. Gauthier. Dr. Salcedo was qualified as an expert in forensic psychology. He testified that he and Dr. Richard Richoux had examined Mr. Gauthier twice and that on the basis of those examinations, they had diagnosed him with "impulse control disorder not otherwise specified" and with "mixed personality disorder with antisocial and grandiose features."
When Dr. Salcedo was asked whether Mr. Gauthier suffered from bipolar disorder, he said that Mr. Gauthier did not have bipolar disorder. Dr. Salcedo further testified that Mr. Gauthier "knows right from wrong now and I find no evidence that at the time of the alleged offense, or really at anytime in his life, has he suffered from a mental disorder of such severity so as to cripple him psychologically to such a degree that he would not be able to tell right from wrong." Dr. Salcedo further said that neither the impulse control disorder nor the personality disorder from which Mr. Gauthier suffered would cause him to be unable to distinguish right from wrong. Finally, although Mr. Gauthier's medial records indicated that bipolar disorder had at one time been considered as a possible diagnosis for Mr. Gauthier's problems, Dr. Salcedo and Dr. Richoux did not diagnose Mr. Gauthier with any type of psychotic mental illness.
Gauthier, pp. 2-5, 941 So.2d at 645-46.
ERRORS PATENT
The only error patent found in the review during the original appeal pertained to the defendant's sentence and was corrected by this Court in its opinion. Furthermore, the original sentence was vacated by the trial court when the defendant was adjudicated and sentenced as a multiple offender. A potential error patent appears in proceedings subsequent to the original trial and sentencing, apparently in connection with the defendant's multiple bill hearing. Minute entries in the record reflect that on February 2, 2007, with the defendant present, the court ordered a lunacy hearing for February 15, 2007. While competency determinations were made prior to trial, there is no indication in the minute entries which followed, or the transcript of the April 2, 2007 proceeding, that a post-trial competency hearing ever took place or that a separate competency determination was ever made in connection with the multiple billing of the defendant. Also, there are no reports from physicians in the record which indicate the results of any post-sentencing examination.
The minute entry of March 16, 2007 states that "clerk will inform the clerks office which event is scheduled for 3-29-07" with a notation below it that both a lunacy hearing and a multiple bill hearing were set for March 29, 2007. The March 29, 2007 minute entry stated that both the defendant and his counsel appeared that date "for multiple bill hearing" which was *1166 then continued on the defense motion. That March 29, 2007 minute entry makes no reference to the lunacy hearing referred to in previous minute entries. At the next setting, April 2, 2007, the multiple offender proceeding occurred, but no further reference is made to anything related to the defendant's mental capacity.
La.C.Cr.P. art. 642 provides that a defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the court has determined that he has the mental capacity to proceed. Here, the record does not indicate the court's determination regarding the defendant's capacity to proceed prior to the multiple bill, although there was a competency hearing prior to trial and the court determined he was competent. Subsequently, the defendant was found competent to represent himself at trial. Furthermore, a review of the April 2, 2007 transcript shows that no mention was made of the defendant's competency, and there was no objection by defense counsel as to any failure to find him competent to proceed with the multiple offender proceeding. Appellate counsel does not raise the issue in an assignment of error, nor does she make any argument regarding the omission. Thus, the defendant has not shown any prejudice.[2]
This Court found no error in the trial court's findings of competence. Gauthier, p. 11, 941 So.2d at 649. Additionally, this Court stated that:
The face of the record in this case confirms that the trial court judge was correct in determining that Mr. Gauthier was sufficiently articulate and intelligent to knowingly and voluntarily waive his right to counsel. For example, the record contains copies of letters that he wrote that demonstrate that he was quite literate, and the record contains handwritten notes of relevant and considered questions that he wanted to ask the witnesses at his trial.
Id., p. 16, 941 So.2d at 652.
The record is devoid of any indication that the defendant's condition deteriorated post-trial, and there is no evidence that the defense moved for a lunacy hearing. Thus, the instant case is distinguishable from State v. Lott, 27,849 (La.App. 2 Cir. 4/3/96), 671 So.2d 1182. In Lott, the appellate court remanded to the trial court based on a finding that the trial court erred in failing to hear the defendant's sanity motion prior to sentencing. On remand, the two doctors who were appointed to examine the defendant filed reports which the trial court considered in affirming the defendant's sentence, but the trial court held no hearing. The appellate court remanded with an order to hold a contradictory hearing at which the defendant could present evidence. Pursuant to that hearing the defendant was again found to be competent. The defendant then appealed that determination of competency, which determination was affirmed. In doing so the appellate court noted that:

*1167 Because Louisiana law presumes sanity, the defendant faces the burden of establishing his incapacity. State v. Brooks, [541 So.2d 801 (La.1989)] supra; State v. Narcisse, [426 So.2d 118 (La.1983)] supra; State v. Bennett, 345 So.2d 1129 (La.1977); State v. Tyler, 607 So.2d 910 (La.App. 2d Cir.1992), writ denied.

Lott, supra, p. 5, 671 So.2d at 1186.
Unlike Lott, as noted previously this Court has already affirmed findings of the defendant's competency in the instant case and there is nothing in the record to indicate that there is any reason to believe that the defendant's competency had deteriorated prior to his multiple billing.
As the Supreme Court stated in State ex rel. Seals v. State, 00-2738, p. 5 (La.10/15/02), 831 So.2d 828, 832:
[W]e note the longstanding precept that a defendant does not have an absolute right to the appointment of a sanity commission simply upon request. State v. Volson, 352 So.2d 1293 (La.1977). A trial judge is only required to order a mental examination of a defendant when there are reasonable grounds to doubt the defendant's mental capacity to proceed. Id.; La.Code Crim. Proc. art. 643.
In Seals, the Supreme Court held that the trial court erred in proceeding to trial without making an assessment of the defendant's mental capacity to proceed after ordering a competency evaluation. Prior to trial, the attorney for the defendant in Seals filed a motion to appoint a psychiatrist to determine whether the defendant was competent to stand trial and to determine his sanity at the time of the offense. The trial judge signed the order appointing the psychiatrist, but the defendant was never examined and the court made no determination as to the defendant's competency.
Thus, the facts in Lott are very different from those in the instant case, where the trial court's determinations as to the defendant's competency at the time of the offense and his competency to represent himself at trial have already been affirmed by this Court on appeal and there is no evidence of any deterioration in the competence of the defendant between the time of the trial and the multiple billing; and there is no motion in the record challenging the defendant's competency at the time of the multiple billing.
We find the instant case to be most similar to that of State v. Payne, 586 So.2d 652, 653-654 (La.App. 5 Cir.1991):
Payne was first brought to trial on September 11, 1989. After the jury was selected defense counsel moved for the appointment of a sanity commission, as the defendant was exhibiting bizarre behavior. On September 13, 1989, after hearing testimony of the psychiatrists, the court concluded that Payne was legally insane and unable to assist in his own defense. The judge committed him to East Louisiana State Hospital for treatment and evaluation and declared a mistrial. After a second sanity hearing on April 5, 1990, the court found the defendant to be sane and mentally competent to stand trial and assist in his own defense. A jury trial was held on September 10, 11 and 12, 1990, resulting in Payne's conviction of simple burglary, LSA-R.S. 14:62.
Counsel for the appellant alleges that the defendant was incompetent during the sentencing hearing, which took place on December 12, 1990.
In State v. Bickham, 404 So.2d 929, 934 (La.1981), the Louisiana Supreme Court stated:
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant lacks the capacity to *1168 understand the proceedings against him or to assist in his defense. C.Cr.P. Art. 641. The defendant bears the burden of establishing that he lacks the capacity to understand the object, nature and consequences of the proceedings against him and that he is unable, in a rational as well as factual manner, to consult with counsel in a meaningful way. State v. Hamilton, 373 So.2d 179 (La.1979).
The issue of present insanity or mental incapacity to proceed may be raised at any stage of the proceedings, even after conviction, as a reason why sentence should not be passed. State v. Clark, 367 So.2d 311 (La.1979); see also State v. Franks, 391 So.2d 1133 (La.1980), cert. den., Franks v. Louisiana, 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 818 (1981). The court must order a mental examination when there are reasonable grounds to doubt defendant's mental capacity to proceed. LSA-C.Cr.P. art. 642. The trial judge's determination is entitled to great weight on appeal and will not be set aside absent a clear abuse of discretion. State v. Bickham, supra. The same judge presided over Payne's first and second trials as well as the sentencing. He was fully aware of Payne's previous condition and the behavior which occasioned his appointing the original sanity commission. The transcript reveals that the defendant responded appropriately to questioning until the matter of his previous convictions was broached. At that point he became evasive, replying to each question that he did not remember. Defendant's counsel did not refer to competency until the judge asked her whether she had reviewed the PSI report with her client and whether he understood. She then said:
Your Honor, Mr. Payne in my attempts to explain to him the procedures has looked away, like he's doing now, he's looking to see who is coming in. He's looking at me now. But I'm reallyIn an abundance of caution I'm going to flat out sayI mean even though the doctors say what they said, I have had considerable difficulty in getting through to Mr. Payne and make him understand what is going on and to get him to even look at the exhibits that the District Attorney gave me to show him. And just to plain old, to cover my rear, I don't think he understands what is going on.
Defense counsel did not move either orally or in writing for a sanity hearing. As the court pointed out in State v. Bickham, supra, there is a presumption of capacity to proceed. In order to overcome the presumption counsel must present evidence, which was not done in this case. The trial judge apparently observed nothing to suggest that the defendant's condition had deteriorated during the three months between the trial and the sentencing hearing. Our review of the record has not disclosed an abuse of discretion by the trial court in this instance. [Emphasis added.]
In the instant case as in Payne there had already been competency determinations, no evidence in the record of any change in competency, no motion by or on behalf of the defendant challenging competency at the time of the multiple billing, and the same trial judge presided over all of the foregoing.
Therefore, we find no patent error regarding the competency of the defendant at the time of his multiple billing.
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant argues that the trial court erred when it denied the motion to quash insofar as it was based upon the State's alleged *1169 failure to proceed with the multiple offender hearing in a timely fashion. The defendant in his brief expressly does not aver that a motion to quash could be based on the failure to timely file the bill. The defendant bases his entire argument on the State's alleged failure to be prepared to go forward with the multiple bill hearing as soon as it filed the multiple bill, which was on June 13, 2005. The defendant argues that the State was dilatory because it did not set the multiple bill hearing sooner than August 26, 2005, and was remiss then as it was unprepared and received a continuance. The defendant notes that he was originally charged in 2003, and further, that the State was aware of his prior conviction years before it filed the multiple bill. Moreover, the multiple bill was not filed until more than two months from his original sentencing had elapsed.
The State in its brief argues that the defendant was on notice at the original sentencing that it would file a multiple bill. The April 4, 2005 minute entry states that a motion to quash the multiple bill was filed, and the court deferred ruling. The State argues that the delay thereafter did not prejudice the defendant as he was aware of the pending bill. Moreover, the State argues, all the delays post-August 26, 2005 were a result of Hurricane Katrina and the ensuing flooding which caused a total disruption of the criminal court system.
Both parties in the briefs acknowledge and discuss an opinion rendered by the Louisiana Supreme Court in which the court, overruling prior jurisprudence, held that a multiple offender sentencing could occur after the defendant had been discharged from the original sentence. In that case, State v. Muhammed, 03-2991, pp. 14-15 (La.5/24/04), 875 So.2d 45, 54-55, the court stated:
Although the statute does not prescribe a time within which the bill must be filed, this court has made a determination that the district attorney must file the habitual offender bill "within a reasonable time." . . . The determination of whether the hearing is held within a reasonable time hinges on the facts and circumstances of the specific case. See Toney, [State v. Toney, 02-0992 (La.4/9/03), 842 So.2d 1083] 02-0992 at 5, 842 So.2d at 1086.
As a general matter, the Supreme Court has set forth four factors for courts to consider in determining whether a defendant's right to a speedy trial has been violated. Those factors are the length of the delay, the reasons for the delay, the accused's assertion of his right to speedy trial, and the prejudice to the accused resulting from the delay. Barker v. Wingo, 407 U.S. 514, 531-32, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972). This court adopted the Barker factors in State v. Reaves, 376 So.2d 136 (La.1979). While these factors are neither definitive nor dispositive in the context of a habitual offender proceeding, they are instructive.
We acknowledge that the Sixth Amendment, by analogy, may superimpose a limitation; however, a case by case evaluation is warranted to determine whether the proceeding has been promptly concluded. See State ex rel. Williams v. Henderson, 289 So.2d at 77. Similarly, relevant speedy trial considerations may be used to assist the court in a determination of whether any delays are unexplained or extraordinarily long. Abusive or vindictive delay should not be tolerated. The longer the State delays filing and is responsible for postponing completion of the habitual offender proceeding, the more likely it is *1170 that the delay will be charged against the State.
The defendant in his brief seeks to distinguish Muhammed because in that case the first multiple bill hearing was conducted within four months of the original sentencing. The delays thereafter were caused by successive appeals involving the multiple offender adjudications and sentences. Similarly, he distinguishes State v. Dauzart, 07-15 (La.App. 5 Cir. 5/15/07), 960 So.2d 1079, in which there were multiple appeals and reversals. He argues that the eight-month delay in this case between the conviction and the first setting of the multiple bill hearing was inexcusable and solely attributable to the failure of the State to prepare.[3]
Although the defendant in his brief specifically does not contend that the multiple bill was untimely filed, his argument is largely focused on the delays that occurred between trial and the first setting of the hearing. However, as noted by the State in its brief, at the trial court level defendant's counsel argued that the delays that occurred after August 2005 were the basis for the motion to quash. Because the entire time period is involved in the question of the timeliness of the hearing, both aspects of case will be discussed.
The first delay post-Hurricane Katrina was approximately six months in duration; on February 6, 2006 a minute entry was generated which stated that sentencing was set for April 28, 2006. Counsel argued to the trial court that there was no indication that it was the State who set the matter for April 28, 2006, and that the State had lost track of the case. Thereafter, according to the defense counsel, there had "been some delays, some attributable to the State, some not, based on the fact that Mr. Gauthier was in custody and they were having trouble having him here." Defense counsel argued that the overall delays of two years from the original sentencing was prejudicial, particularly because the defendant had been released on parole in October 2005, although he was arrested on a new charge which was later refused. Defense counsel stated that the defendant had been placed back on parole the week before.
The assistant district attorney responded to the defense counsel's argument by citing to Muhammed and noting that the defendant had been placed on notice of the multiple bill within two months of his sentencing. The prosecutor also stated that it had been very difficult to procure the defendant's presence in court, and that she and her associate had "repeatedly sent out writs" in attempts to do so. The trial court acknowledged that it had been very difficult to procure the defendant's attendance, and it had personally been involved. The court stated that the multiple bill was "quite timely" filed, and that viewing the timeline overall, the State had not been remiss. The court further acknowledged the problems associated with scheduling cases after Hurricane Katrina; the court stated that "this case was set relatively quickly in terms of trying to get it back on track. . . .". The court pointed out that, because the defendant was still on parole, he had not finished his sentence. The court therefore denied the motion to quash.
We find no abuse of the trial court's discretion. The defendant was originally sentenced to five years and was aware at the time he was sentenced to that term that the State would pursue a multiple bill enhancement. The problems caused by Hurricane Katrina resulted in a delay of *1171 approximately eighteen months before the multiple offender proceedings were concluded. While the State was responsible for the one continuance that occurred prior to the hurricane, there is only one continuance after the hurricane, on December 15, 2006, which was attributable directly to the State. On February 2, 2007, the defense moved for a continuance, which was granted; notably the defendant was actually present in court that day. It was on the same date that the court ordered a lunacy hearing, which by law caused a stop to the proceedings. Finally, when the defendant was next in court on March 29, 2007, the defense moved for and was granted another continuance. The record indicates that, on every other setting following the hurricane, the defendant was not present in court. While the usual reason the defendant was not present was because he was not transported from a prison facility, he also did not appear after he was released from jail. According to the August 14, 2006 entry, the court ordered that notice be sent to his home address for next hearing and that notice be sent to his parole officer. The defendant did not appear at the next hearing, and alias capias was issued for his arrest.
There is nothing in the record to indicate that the State vindictively delayed filing the multiple bill or that the delays in holding the hearing were attributable to the State. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, the defendant argues that he was denied the right to a jury trial at the multiple offender hearing. There is no constitutional right to a jury trial in multiple billing proceedings. State v. Smith, 05-0375 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, citing Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Therefore, there is no merit to this assignment of error.
ASSIGNMENT OF ERROR NUMBER
In his third and final assignment of error, the defendant argues that his sentence is excessive. He contends more specifically that his original sentence of five years, which was the maximum for the offense of intimidation of a witness, a violation of La. R.S 14:129.1, was sufficient and should not have been increased. The trial court imposed a term of seven and one-half years on the defendant following his adjudication as a second offender. The maximum the court could have imposed was ten years and the minimum was two and one-half years. La. R.S. 14:129.1; La. R.S. 15:529.1.
In State v. Smith, 2001-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4, the court set forth the standard for evaluating a claim of excessive sentence:
Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that "[n]o law shall subject any person to . . . excessive . . . punishment." (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have *1172 been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; cf. State v. Phillips, 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
See also State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973; State v. Batiste, 06-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810; State v. Landry, 03-1671 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235.
In Batiste, at p. 18, 947 So.2d at 820, this Court further explained:
An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed. State v. Landry, supra; State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181. However, as noted in State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813: The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
If the reviewing court finds adequate compliance with art. 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as the circumstances of the case, "keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged." State v. Landry, XXXX-XXXX at p. 8, 871 So.2d at 1239. See also State v. Bonicard, 98-0665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184.
In his brief, the defendant complains that the trial court, when it imposed the original sentence, failed to give any specific reasons for the maximum sentence, stating only that it had reviewed the presentence investigation report and was relying on the La. C.Cr.P. art. 894.1 factors. He argues, therefore, that the court's statements at the resentencing that it was "already on record that the [sic] the sentencing hearing with my 894.1 and PSI recitation of sentencing factors" and "all those things don't need to be reiterated," resulted in an inadequate compliance with La.C.Cr.P. art. 894.1. Notably, in the original appeal, the defendant made a similar argument regarding his original sentence. This Court rejected it noting that there had been testimony at the sentencing hearing at which both the victim and the defendant testified and that the presentence investigation report reflected his "prior encounters with the criminal justice system," Gauthier, p. 23, 941 So.2d at 655.
In discussing whether the record adequately provided sufficient facts to support the maximum sentence, the Court noted that the victim's "testimony revealed an ongoing fear of retaliation from Mr. Gauthier," including her belief that he would "wait a while after his release to harm her, `because he knows that if anything was [sic] to happen to me right away that they'll automatically know that it was him.'" Id., 941 So.2d at 655-56. The Court then reviewed the defendant's own testimony at the hearing, during which he alluded to a thirty-six month contempt sentence for repeated violations of a restraining order. This Court noted that he *1173 had suggested that there were no prior incidents of domestic abuse, that the victim was somehow to blame for his attack on her, and that her actions in pursuing the prosecution were based on vindictiveness and not her fear of him. This Court concluded that his testimony made it clear that he was completely unable to comprehend the magnitude of his offense's impact on the victim. Gauthier, p. 23-24, 941 So.2d at 656. The Court also reviewed the trial court's stated reasons for sentence, which included the court's finding that there was an element of potential harm and actual threats; thus there was an undue risk that the defendant would commit another crime if released on probation. The trial court had also stated that it had determined that any sentence below the maximum would "certainly deprecate the seriousness of the offense." Id. Therefore, after considering the court's findings, the criminal history set forth in the presentence investigation report, and the testimony at the sentencing hearing, this Court concluded that defendant's five-year sentence was not excessive.
The defendant is correct that, at the resentencing pursuant to the multiple offender adjudication, the trial court referenced its prior reasons for sentencing. However, prior to imposing the sentence, the court asked if the State had a new rap sheet, to which the prosecutor responded affirmatively. The court called defense counsel up to the bench, and a short unrecorded conference ensued. The inference is that the parties and the court reviewed the rap sheet as immediately thereafter the court imposed sentence. Before the court had even finished doing so, the defense counsel objected to the sentence and orally moved to reconsider on the grounds that his client had only the one prior conviction, for attempted possession of cocaine, for which he received probation. After denying the motion, the court gave its reasons, noting that it did not need to restate those reasons given at the first sentencing proceeding. However, the court added one additional factor to its prior reasons. The court recognized that, since his release on parole from the Department of Corrections, the defendant had been arrested for domestic battery, which charge was refused.[4] Considering that the instant case arose from a domestic abuse situation and that the defendant had been convicted in this case of the responsive charge of simple battery, in addition to the felony charge of intimidation of a witness, the court was certainly justified in enhancing the defendant's multiple offender sentence upon learning he had been arrested for the same type of crime. This is even more justified when the defendant's testimony from the original sentencing, in which he revealed a total lack of empathy for the victim and understanding of the nature of the crimes associated with domestic abuse. The prior incarceration and parole had not completely dissuaded the defendant from his behavior.
The trial court did not impose a maximum sentence after adjudicating the defendant a second offender. Considering the entire record, the court's decision to increase the term of years above the term given at the original sentencing does not appear to be an abuse of the court's discretion. This assignment of error lacks merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
JONES, J., dissents with reasons.
*1174 JONES, J., dissenting.
The majority affirms the sentence imposed by the district court after the district court found the defendant to be a multiple offender. The majority affirms, notwithstanding that there clearly was a motion filed on behalf of the defendant, questioning his ability to proceed.
At the multiple offender hearing, the motion was outstanding, yet the district court proceeded without a resolution of the motion. The motion was not withdrawn by the defendant, nor was the defendant examined by competent medical personnel to determine whether he could proceed. However, counsel for the defendant and the court ignored the motion as if it did not exist.
The actions of counsel, at first blush, clearly appear to offer evidence of ineffective assistance of counsel. And, while this dereliction by defense counsel is not new in Orleans Parish, the persistent tolerance by the district court of ineffective counsel is also a continuance of a pattern long experienced in Orleans Parish.
However, it is the most unfortunate conduct of the majority herein which is most disturbing. Because, for now, the new rule of the majority is that a district court is free to ignore a properly filed motion challenging a defendant's competence to proceed. The suggestion by the majority is that it is okay to simply exchange a wink and nod between the trial judge and counselall to the prejudice of the defendant. And, now this behavior may be construed as a waiver by the defendant, or even harmless error.
Thus, for these reasons, I Dissent.
NOTES
[1] Mr. Gauthier was charged in the bill of information with second degree battery, however.
[2] Also, the defendant entered a dual plea of not guilty and not guilty by reason of insanity. His sole witness at trial was Dr. Raphael Salcedo, one of the members of the sanity commission. Dr. Salcedo testified that the diagnosis made by the members of the commission was that the defendant suffered from "impulse disorder not otherwise specified. And then mixed personality disorder with antisocial and grandiose features." He further stated that neither of those conditions "impaired his ability to understand the proceedings against him or his ability to assist his attorney in preparing his defense." Id.
[3] The defendant's trial was held on January 13, 2005, and thus it was actually less than eight months to the first scheduled hearing date of August 26, 2005.
[4] There was no mention of the name of the victim.