JAMES F. MCKAY III, CHIEF JUDGE
*437 Damon Patterson appeals his conviction and sentence. Based upon the record, evidence and applicable jurisprudence presented to this Court we affirm both his conviction and sentence.
STATEMENT OF CASE
On November 15, 2011, the State charged Damon Patterson (defendant) with being a felon in possession of a firearm, a violation of La. R.S. 14:95.1 (count 1); resisting an officer by force, in violation of La. R.S. 14:108.2 (count 2); possession of cocaine, in violation of La. R.S. 40:967(C)(2) (count 3)[1] , and possession of drug paraphernalia, a violation of La. R.S. 40:1023 (count 4).
The defendant was arraigned on November 22, 2011, and entered not guilty pleas to all charges.
Following a hearing on May 8, 2012, the defendant was found competent to proceed.
On August 23, 2012, the court sentenced the defendant to twelve years at hard labor on count 1 and to two years on count 2, sentences to run concurrently. Also, the trial judge found the defendant guilty of count 4 and sentenced him to serve five months in Orleans Parish Prison, sentence to run concurrently with his other sentences.
On January 22, 2014, the State filed a multiple bill alleging that the defendant was a quadruple offender. On May 16, 2014, the court held a hearing on the multiple bill. The court found insufficient evidence to adjudicate the defendant a quadruple offender.
On May 7, 2015, after a previous ruling by the trial court, the State filed a new multiple offender bill again alleging the defendant was a quadruple offender. On June 29, 2015, following the trial of the multiple bill, the court adjudged the defendant a quadruple offender. The court vacated the defendant's twelve-year sentence for the crime of felon in possession of a firearm and re-sentenced him to thirty years at hard labor.
The defendant's timely appeal follows.
STATEMENT OF FACT
Officer Joseph Pollard, the State's expert fingerprint examiner, identified State's Exhibit 1 as the defendant's fingerprints, which Officer Pollard took on August 13, 2012. Officer Pollard identified the Orleans Parish cert pack under case number 381-113 in which the defendant pled guilty on November 12, 1997, to simple *438 burglary of an inhabited dwelling. Officer Pollard compared the fingerprints on the back of the bill of information and found the fingerprints matched and that the fingerprints belonged to the defendant.[2]
Lydrell Varise of the NOPD's Communication Center testified that all 911 calls received by the department are recorded and assigned an item recall number (in this case J-5064-11) for future investigative purposes. Ms. Varise identified State's Exhibit 4 as the audio recording of the call for assistance placed by Ms. Marichelle Cooper.
NOPD Criminalist Jon Hoang, an expert in the identification of controlled dangerous substances, analyzed the loose powdery substance seized in this case. The plastic bag containing the substance was identified by Item No. J-5064-11. The substance proved to be cocaine.
Detective Jason Hickman responded to a call for service at 1218 Kabel Drive on October 4, 2001. Detective Hickman spoke to Ms. Cooper, the complainant/caller. She explained that the defendant was armed, using drugs and had barricaded himself in her residence. Ms. Cooper feared for the safety of her elderly father and children. Detective Hickman and Officer Theresa Morris entered the house accompanied by Ms. Cooper, who led them to the bedroom and unlocked the door for the officers to enter. Detective Hickman and Officer Morris, with their weapons drawn, opened the bedroom door. They observed the defendant standing about two feet from the door holding a black semi-automatic weapon, which he pointed directly at them. Detective Hickman ordered the defendant to put his weapon down. The defendant slowly placed his gun on the floor. Detective Hickman then ordered the defendant to exit the bedroom. As the defendant did so, Detective Hickman and Officer Morris holstered their weapons, whereupon the defendant became combative. He charged the officers and threw Officer Morris against the wall and Detective Hickman to the floor. The defendant refused to submit to the officers and continued to batter and wrestle with Detective Hickman and Officer Morris, who tased the defendant. The defendant remained out of control and ran to the front door. Backup officers arrived on the scene, and the struggle continued with the defendant attempting to enter his truck. An officer pepper-sprayed the defendant, but that did not stop him. Officer Morris tased the defendant a second time and still the defendant remained non-compliant. The fighting continued with other officers joining in the attempt to subdue the defendant. Detective Hickman struck the defendant in the leg with a baton, but the defendant continued to resist. Yet another contingency of officers arrived on the scene and finally secured and handcuffed the defendant. Detective Hickman reentered the house and retrieved the defendant's loaded gun from the bedroom. After giving a statement at the police station, Detective Hickman was transported to the hospital for treatment of injuries to his hands, knees and eye.
Officer Morris testified and corroborated Detective Hickman's reporting of their responding to a disturbance call on October 4, 2011, and their ensuing encounter with the defendant. Like Detective Hickman, Officer Morris suffered bodily injury from being tossed about by the defendant.
Sergeant Bradley Wax arrived on the scene after Detective Hickman and Officer Morris. Ms. Cooper advised Sergeant Wax *439 that Detective Hickman and Officer Morris were inside the house trying to subdue the defendant. Sergeant Wax entered the residence as Detective Hickman and Office Morris were trying to calm the defendant in the hallway outside the bedroom. The defendant was talking wildly as he struggled with the officers as they attempted to handcuff him. Sergeant Wax approached the defendant and attempted to pacify him and talk about the disturbance. The defendant broke away from Detective Hickman and Officer Morris and headed toward the front door. Upon realizing the dangerous position the defendant placed the officer in, Sergeant Wax called for backup. He then re-engaged the defendant and was pulled down on the floor where he and Detective Hickman once again wrestled with the defendant. Officer Morris tased the defendant, but it had no effect on him. One of the officers pepper-sprayed the defendant. Detective Hickman struck the defendant in leg with his baton, and Officer Morris tased a second time. The defendant continued to struggle and yell wildly. Backup finally arrived and detained the defendant. Sergeant Wax also sustained bodily injury while subduing the defendant.
Detective Humbles responded to Sergeant Wax's call for backup at 1218 Kabal Drive. Detective Humbles and Detective Corey Foy observed the defendant in a kneeling position attempting to get up. Detective Hickman was on the ground and battered. Officer Morris was holding a taser in her hand, and Sergeant Wax had his radio in his hand requesting backup. As Detective Humbles exited his vehicle, the defendant got to his feet but was knocked down by officers. The defendant was ultimately restrained but only after several more officers and EMS personnel assisted. Sergeant Wax, Detective Hickman and Officer Morris were bloodied as a result of their confrontation with the defendant. Detective Humbles had Ms. Cooper sign a consent to search form and accompanied her into the house. Ms. Cooper led Detective Humbles to the bedroom and related that the defendant had been smoking drugs earlier in the day and refused to leave her house. Detective Humbles' search of the room yielded a plastic bag containing a white substance, which proved to be cocaine. Ms. Cooper showed Detective Humbles an aluminum can the defendant had been smoking out of that day.
The defendant called Lieutenant Bradley Tollefson, who testified he authored the police report in lieu of Sergeant Wax, who was injured in the scuffle with the defendant. Lieutenant Tollefson interviewed Ms. Cooper on the day of the incident at the police station. He identified the recording of the interview. The prosecution played the tape for the jury. In her statement, Ms. Cooper recounts smelling smoke in her house the morning of the incident and going to her bedroom where she encountered the defendant who was smoking cocaine. She told him to leave and then she left the house to bring her daughter to school. When Ms. Cooper returned, the defendant was still in her house smoking cocaine. She opened the bedroom door and saw that the defendant had a gun in his hand. She closed the door and led her father and child out of the house. She called the police, reported the defendant's activities and alerted police that the defendant was armed. When the officers confronted the defendant at Ms. Cooper's residence, he resisted them to the utmost-battering and knocking the officers down. Because she feared for the officers' safety, Ms. Cooper videotaped the defendant fighting with the officers. Eventually, additional officers and EMS personnel arrived and were able to subdue the defendant.
Ms. Lafondra Patterson, the defendant's sister, testified on his behalf. She related *440 having received a phone call from Ms. Cooper asking her to come to the residence to check on the defendant. When Ms. Patterson arrived on the scene, the defendant was strapped to a stretcher. She was told he was alright but that he was high on drugs, which surprised her because she was not aware the defendant ever used drugs. She also learned the defendant had been tased during his encounter with the police.
The defendant testified that Ms. Cooper awoke him early on the morning of the incident and said the police were coming to the house. The defendant got out of bed, dressed and tried to make his way to the front door. He was met by officers, who kept pushing him back in the house. He denied fighting with the officers and said he just wanted to leave the residence. He claimed that on the video made by Ms. Cooper, he can be seen crawling on the ground because he broke his leg when he encountered the police. He told the jury the police had tased him numerous times and tried to smother him while he was on the medical stretcher. The defendant claimed that the police caused such damage to his internal organs he thought he was dying. He said the police forced Ms. Cooper to make the 911 call; supplied her with the cell phone to make the video of his encounter with the police; and coerced her into making the statement about his smoking cocaine and possessing a gun. He denied owning a gun and being involved with drugs. In fact, when he encountered the police on October 4, one of the officers went into the bedroom and crushed some pecan candy and then claimed it was cocaine. He claimed this incident, which resulted in several charges against him, was in retaliation for his filing a disciplinary complaint against Sergeant Wax stemming from an earlier dispute over a car.
ERRORS PATENT [3]
A review for errors patent on the face of the record reveals two as to the defendant's sentence. When resentencing defendant as a fourth-felony habitual offender, the district court sentenced the defendant to an illegally lenient sentence by omitting the restriction that the sentence be served without probation in addition to the restrictions that it be served without benefit of parole or suspension of sentence. See La. R.S. 15:529.1 G (providing that "[a]ny sentence imposed under the provision of this Section shall be at hard labor without benefit of probation or suspension of sentence"); see also State v. Sterling , 2011-1837 (La. 3/9/12), 84 So.3d 557 (providing that sentencing restrictions imposed on habitual offenders are those stipulated for the present felony as well as those in the applicable portions of the Habitual Offender Law, La. R.S. 15:529.1 ). The sentencing restrictions for the defendant's present felony-felon in possession of a firearm ( La. R.S. 14:95.1 )-are that the sentence be served at hard labor without the benefit of parole, probation, or suspension of sentence. The district court thus erred in failing to stipulate that the sentence be served without the benefit of probation. Pursuant to La. R.S. 15:301.1 A and State v. Williams , 2000-1725, pp. 10-11 (La. 11/28/01), 800 So.2d 790, 798-799, a sentence is deemed to have been imposed with these restrictions of benefits even in the absence of the district court delineating them.
*441 State v. Fields , 2012-0674, p. 4, n. 3 (La. App. 4 Cir. 6/19/13), 120 So.3d 309, 314, writ denied , 2013-1692 (La. 2/14/14), 132 So.3d 401, cert. denied , --- U.S. ---, 135 S.Ct. 121, 190 L.Ed.2d 92 (2014). Therefore, there is no need for this Court to take any action to correct the sentence. See State v. Griffin , 2015-0125 (La. App. 4 Cir. 9/16/15), 176 So.3d 561, 563, writ denied, 2015-1894 (La. 11/7/16), 208 So.3d 896, reconsideration not considered, 2015-1894 (La. 1/25/17), 215 So.3d 262.
In addition, the State argues this appeal must be dismissed as untimely.
The delays for making a motion for an appeal of criminal convictions and sentences are found in La. C.Cr.P. art. 914, which provides that a motion for an appeal in a criminal matter must be made no later than "[t]hirty days after the rendition of the judgment or ruling from which the appeal is taken," or "[t]hirty days from the ruling on a motion to reconsider sentence filed pursuant to Article 881.1, should such a motion be filed."
While a defendant may file a direct appeal of a habitual offender adjudication, it must be taken within the time delay provided for in La. C.Cr.P. art. 914. See State v. Williams , 2012-687, p.15 (La. App. 5 Cir. 5/16/13), 119 So.3d 228, 237. When a defendant fails to file a timely motion for an appeal, his conviction and sentence are final. See State v. Jupiter , 2005-869, pp.3-4 (La. App. 5 Cir. 2/3/06), 922 So.2d 1245, 1246-1247.
The appropriate procedural remedy for a defendant seeking to exercise his right to appeal after his conviction and sentence become final is a timely-filed application for post-conviction relief seeking an out-of-time appeal pursuant to La. C.Cr.P. arts. 924 - 930.7. State v. Gray , 2004-1272, p.2 (La. App. 5 Cir. 4/26/05), 902 So.2d 1060, 1061. La. C.Cr.P. art. 930.8 provides that applications for post-conviction relief, including requests for out-of-time appeals, must be filled within two years from the date that a defendant's conviction and sentence become final, unless certain specific exceptions apply.[4]
The trial court does not have jurisdiction to grant an untimely application for *442 post-conviction relief seeking for an out-of-time appeal absent the showing of an exception to the time limitation as provided for by Article 930.8. State v. Russell , 2014-841, p. 5 (La. App. 5 Cir. 1/28/15), 167 So.3d 917, 919.
In this case, the defendant was convicted of being a felon in possession of a firearm and resisting by force on August 15, 2012, and filed a Motion for New Trial at that time, which the court denied. Thereafter, the defendant was sentenced on August 23, 2012.
On June 29, 2015, the defendant was adjudicated and sentenced as a quadruple offender.
The assignments of error raised by the defendant on appeal pertain to issues at his trial on August 15, 2012, and issues at the multiple bill hearing on June 29, 2015.
The defendant herein did not file a motion for appeal within thirty days of his initial conviction (August 15, 2012), or his sentencing (August 23, 2012), nor his re-sentencing (June 29, 2015). Neither did he file motions to reconsider sentence within thirty day of his initial sentencing or his re-sentencing. The defendant's habitual offender adjudication and sentence became final for purposes of La. C.Cr.P. art. 930.8 on June 29, 2015 by virtue of his not having filed a timely motion for an appeal challenging his August 23, 2012, conviction and sentence, see La. C.Cr.P. art. 914, and on June 2017 for purposes of post-conviction relief.
However, the docket master indicates that on March 10, 2016, the State advised the trial court that the defendant had filed a motion for appeal in this case, though not indicating the date of the motion for appeal was filed, and that the defendant needed a return date. Then on May 6, 2016, the docket master reflects:
As to defendant, ... Status hearing on 5/10/16 this court issued a notice of appeal in the above matter directing court reporters ... to lodge the related transcriptions on or above (sic) 7/8/16. However, this court was just made aware that the trial proceedings in this case took place in Section C and not Section G; therefore, the notice of appeal must be amended/re-issued by Section C to reflect those parties responsible for the transcript associated with same. According, (sic) an amended notice of appeal has been issued and the new return date is set for 7/20/2016. Minute forwarded to defendant.
Based upon the record before this Court, there is no indication that the defendant ever waived his constitutionally protected right to appeal his convictions and sentences and the defendant would be granted an out of town appeal pursuant to State v. Counterman , 475 So.2d 336, 338 (La. 1985). Therefore, the defendant's appeal will not be dismissed as untimely.
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant asserts that because there is no available transcript of that portion of voir dire dealing with challenges for cause, his conviction must be reversed. However, as the record has been supplemented with the voir dire transcript, rendering that issue moot, the following discussion will review the defendant's argument that the trial court erred by denying his challenging Ms. Harowski for cause.
A trial court is vested with broad discretion in ruling on challenges for cause; its rulings will be reversed only when a review of the entire voir dire reveals that the court's exercise of discretion was arbitrary and unreasonable, with resultant prejudice to the defendant. State v. Huckabay , 2000-1082, p. 22 (La. App. 4 Cir. 2/6/02), 809 So.2d 1093, 1106, citing *443 State v. Knighton, 436 So.2d 1141, 1148 (La. 1983) ; State v. Robertson, 92-2660 (La. 1/14/94), 630 So.2d 1278, 1281 (a trial judge's ruling on a challenge for cause will be reversed only when a review of the entire voir dire reveals that the trial court abused its discretion).
In this case, the defendant questioned the potential jurors and challenged Ms. Harowski for cause, citing her opinion that a sworn affidavit could be utilized as proof of the offense in lieu of the victim's testimony at trial.
The defendant's argument is without support. Review of the voir dire transcript indicates Ms. Harowski merely expressed an opinion. However, she did indicate she could return a not guilty verdict if the State failed its burden to prove the defendant's guilt beyond a reasonable doubt; accept the law as instructed by the judge; determine the weight of the evidence; and could be fair and impartial.[5] This assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 2
In a second assignment, the defendant claims several instances of prosecutorial misconduct.
First, the defendant contends that the State violated La. C.E. art. 770 by introducing evidence of his prior conviction for distribution of cocaine as impeachment of evidence of his character or reputation. The defendant argues that the evidence that he elicited from Ms. Patterson on direct examination was not character or reputation evidence.
Under direct questioning by the defendant, Ms. Patterson testified she was not aware the defendant used drugs.
During cross-examination, the prosecutor asked Ms. Patterson if she was aware the defendant was convicted of distributing crack cocaine in 1992. The defense lodged an objection, which the trial court sustained, and asked for a mistrial on the basis of prosecutorial misconduct, which was denied.
Generally, Louisiana has a fundamental rule that evidence of a defendant's other crimes or bad acts is not admissible to prove the defendant committed the crime being prosecuted because he has committed other such crimes in the past or to show he probably committed the crime being prosecuted because of his criminal character. State v. Gray , 2014-1213, p. 8 (La. App. 4 Cir. 11/25/15), 179 So.3d 936, 940-941, writ denied , 2016-0006 (La. 1/13/17), 215 So.3d 241, citing State v. Garcia , 2009-1578, p. 53 (La. 11/16/12), 108 So.3d 1, 38.
When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant, as to which evidence is not admissible, the defendant's remedy is a request for an admonition or a mistrial pursuant to La. C.Cr.P. art. 771. The remark or comment must constitute an unambiguous reference to other crimes. State v. Lewis , 95-0769, p.7 (La. App. 4 Cir. 1/10/97), 687 So.2d 1056, 1060. Upon request by the defendant, the trial court shall admonish the jury to disregard such remark or comment. La. C.Cr.P. art. 771. Upon motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant of a fair trial. Id. The granting of a mistrial under La. C.Cr.P. art. 771 is at the discretion of the trial court, and a *444 mistrial should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Smith , 418 So.2d 515, 522 (La.1982) ; State v. Allen , 94-1895 (La. App. 4 Cir. 9/15/95), 661 So.2d 1078, 1085. However,
A "[m]istrial is an extreme remedy and, except for instances in which the mandatory mistrial provisions of La. C.Cr.P. art. 770 are applicable, should only be used when substantial prejudice to defendant is shown. State v. Burton , 09-0826, p. 10 (La. App. 4 Cir. 7/14/10), 43 So.3d 1073, 1080 A trial court's decision as to whether actual prejudice has occurred and whether a mistrial is warranted will no be overturned on appeal abent an abuse of discretion. State v. Maxwell , 11-0564, p. 25 (La. App. 4 Cir. 12/21/11), 83 So.3d 113, 128.
State v. Ross , 2015-1031, p. 8 (La.App. 4 Cir. 6/15/16), 195 So.3d 1210,1216 ; State v. Henry , 2011-1137, pp.15-16 (La. 4 Cir. 10/24/12), 102 So.3d 1016, 1025.
The State responds to the defendant's position that it engaged in prosecutorial misconduct by soliciting inadmissible "other crimes" evidence, during its cross-examination of Ms. Patterson by arguing that the defendant placed his good character at issue when he elicited from her on direct that she was unaware he used drugs. Consequently, the State contends the prosecutor's question about the defendant's 1992 conviction for distribution of cocaine was permissible as impeachment under La. C.E. arts. 607 and 608.
A witness may be cross-examined on any matter relevant to any issue in the case. La. C.E. art. 611. La. C.E. art. 404 generally disallows the admission of evidence of a person's character or a trait of his character for the purpose of proving he acted in conformity therewith on a particular occasion. However, as a limited exception to the general rule, Article 404(A)(1) allows admission of evidence of a pertinent trait of a defendant's character-such as a moral quality-offered by an accused, or by the prosecution to rebut the character evidence. Under La. C.E. art. 405(A), a character witness may be cross-examined regarding relevant specific instances of conduct. State v. Mosley , 2008-1318, p.18 (La. App. 5 Cir. 5/12/09), 13 So.3d 705, 716.
In this case, the defendant opened the door to evidence concerning his character. The State has the right to rebut testimony elicited from a witness by the defense. See State v. Koon , 96-1208, p. 25 (La. 5/20/97), 704 So.2d 756, 771-72.
In State v. Hurst , 2001-1817 (La. App. 4 Cir. 9/25/02), 828 So.2d 1165, the defendant was convicted of second degree murder. His mother was called by the defense as a character witness at trial. Defense counsel questioned the mother as to whether she had ever known her son to be violent or to carry a gun. She responded that the defendant was not violent, and that she had not seen a gun. On cross-examination, the prosecutor asked her about the defendant's prior arrests for armed robbery, possession of cocaine and possession of marijuana, and his conviction for theft of goods valued at under $100.00. Hurst , 2001-1817 at 7-8, 828 So.2d at 1170.
On appeal, the defendant argued the trial court erred in overruling his objections to the State's questions regarding his prior criminal history. Citing La. C.E. art. 405, this Court held the questions were proper rebuttal to the character testimony elicited from the defendant's mother because "[t]he defense opened the door to evidence concerning the defendant's character." Id.
Similarly, by questioning Ms. Patterson in this case regarding whether she knew the defendant to use drugs, the defendant *445 opened the door to rebuttal questioning by the State. Therefore, the State's questioning was proper.
Nevertheless, even if there was error, the erroneous admission of other crimes evidence has long been held subject to harmless error review. La. C.Cr. P. art. 921 ; State v. Johnson , 94-1379, pp. 14-15 (La. 11/27/95), 664 So.2d 94, 100-01 (errors leading to improper admission of evidence subject to harmless-error analysis; error harmless if verdict "surely unattributable" to (error)(quoting Sullivan v. Louisiana , 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993) ).
In this case, the evidence of the defendant's guilt of the crimes of possession of a firearm by a felon and resisting an officer with force was overwhelming. Officer Joseph Pollard, the State's expert fingerprint examiner, proved the defendant had a prior conviction for simple burglary thus establishing that the defendant was a convicted felon.
Detective Hickman, Officer Morris, and Ms. Marichelle Cooper all testified the defendant was armed when they encountered him and that he pointed his weapon directly at the officers when they attempted to remove him from the residence. Additionally, the 911 call made by Ms. Cooper demonstrated that the defendant was in her house, armed and using drugs, and her statement, which was played at trial, proved the defendant's violent and erratic behavior when the police arrived. Other officers detailed their struggles with the defendant as he wrestled them to the ground and overpowered them while fighting to flee the scene.
Even though the prosecutor attempted to elicit testimony from Ms. Patterson concerning the defendant's prior conviction, Ms. Patterson did not answer affirmatively. Finally, even assuming the testimony of the conviction may have had an adverse effect on the jury, its impact would have almost certainly affected only the defendant's charge of possession of cocaine, and the jury was hung on that charge. There is nothing to suggest the State's questioning concerning the defendant's prior drug conviction contributed to the jury's verdict.
Next, the defendant references portions of the record as illustrative of other instances of prosecutorial misconduct, including instances in which the district attorney called the defendant a "liar" during both cross-examination and closing argument. The defendant cites the following exchanges between the defendant and prosecutor during cross-examination and the prosecution's reference to the defendant during closing argument:
Cross-examination:
Prosecutor:
You're lying. You're testifying lies.
Defendant:
He's calling me a liar, Judge.
Prosecutor:
I'm saying you're lying. Would you agree with me?
Defendant:
That's not true.
Closing argument:
Prosecutor:
This defendant, this criminal, this con artist, this pathological liar ...
"Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics." State v. Legrand , 2002-1462, p. 16 (La. 12/3/03), 864 So.2d 89, 101. Although La. C.Cr.P. art. 774 confines the scope of argument to "evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case," the trial judge has broad discretion *446 in controlling the scope of closing argument. Id. Accordingly, even where the State exceeds the bounds of proper argument, a conviction will not be reversed unless the court is thoroughly convinced that the argument influenced the jury and contributed to the verdict. Id. ; see also United States v. Rodriguez , 43 F.3d 117, 124 (5th Cir.1995) ("prosecutorial misconduct must be so pronounced and persistent that it casts serious doubt upon the correctness of the jury's verdict.")
General comments on the credibility of a witness are not prohibited if the record contains facts which bear on the witness's credibility. State v. Riley , 2005-1311, p. 7 (La. App. 4 Cir. 9/20/06), 941 So.2d 618, 622, citing State v. Sayles , 395 So.2d 695 (La.1981).
The defendant appeared and testified at trial refuting the prosecutor's remarks. He has not demonstrated that the remarks contributed to the verdict. The remarks made by the prosecutor in this case fall under the wide latitude afforded to parties making closing arguments and comments contesting a witness' veracity, considering that the trial judge instructed the jury that comments made by the attorneys were not evidence in the case. Giving credit to the good sense and fair-mindedness of the jurors who heard the arguments and evidence, it is unlikely that any of the objected-to remarks on behalf of the State in this case influenced the jury and contributed to the verdict. See State v. Robinson , 2001-1305, p. 14 (La. App.4 Cir. 4/17/02), 820 So.2d 571, 581. This assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 3
In this assignment, the defendant argues that the State was erroneously allowed to introduce two instances of hearsay evidence which violated his confrontation rights-the cell phone video recording Ms. Marichelle Cooper took depicting the defendant's interaction with the police and the recorded statement she gave to the police.
The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront witnesses against him. The United States Supreme Court has held that this guarantee, which is extended to the States by the Fourteenth Amendment, includes the right to cross-examine witnesses. Cruz v. New York , 481 U.S. 186, 189, 107 S.Ct. 1714, 1717, 95 L.Ed.2d 162 (1987) ; State v. Collins , 2010-0757 (La. App. 4 Cir. 5/11/11), 65 So.3d 271, 286.
The Confrontation Clause bars the admission of an out-of-court "testimonial" statement against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Crawford v. Washington , 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004) ; Davis v. Washington , 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).
Hearsay is defined by La. C.E. art. 801(C) as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is inadmissible unless it falls within certain exceptions. La. C.E. arts. 802 - 804.
While the Crawford Court specifically declined to define "testimonial," it recognized that, at a minimum, testimonial statements include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Crawford , 541 U.S. at 68, 124 S.Ct. at 1374. The Supreme Court stated that "testimony" is "[a] solemn declaration or affirmation made for the purpose of *447 establishing or proving some fact." Id. , 541 U.S. at 51, 124 S.Ct. at 1364.
The Sixth Amendment bestows a right of confrontation to confront witnesses who "bear testimony" against him. According to the Supreme Court, an accuser making a formal statement to government officials bears testimony in a sense that a person making a casual remark to an acquaintance does not. Id. Some examples of testimonial statements include affidavits, custodial examinations, depositions, prior testimony, confessions, or similar pretrial statements that declarants would reasonably expect to be used in a prosecution. Id. ; State v. Williams, 2015-0866 (La. App. 4 Cir. 1/20/16), 186 So.3d 242, 246-47, writ denied , 2016-0332 (La. 3/31/17), 217 So.3d 358.
A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. La. C.Cr.P. art. 841(A). In this matter, the defendant not only did not object to the introduction of the cell phone video, he introduced it at trial.
With regard to the admission of Ms. Cooper's recorded statement, even if the out-of-court statement violated the defendant's confrontation rights because the statement was testimonial in nature and Ms.Cooper was not available for cross-examination, confrontation clause violations are subject to a harmless error analysis. See Delaware v. Van Arsdall , 475 U.S. 673, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986) ; State v. Robinson , 2001-0273, p.9 (La. 05/17/02), 817 So.2d 1131 ; State v. Henderson , 2013-0526, p.12 (La. App. 4 Cir. 2/19/14), 136 So.3d 223, 230. The admission of hearsay testimony "is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial." State v. Johnson , 389 So.2d 1302, 1306 (La.1980). Established case law provides that the verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is unattributable to the error. Sullivan v. Louisiana , 508 U.S. 275, 279, 113 S.Ct. 2078, 2081-82, 124 L.Ed.2d 182 (1993).
In this case, by the time the jury heard Ms. Cooper's recorded statement, they had already heard her 911 call, which contained the same information she gave in her recorded statement-that the armed defendant was barricaded in her bedroom, smoking crack cocaine. Ms. Cooper's recorded statement was merely cumulative and corroborative evidence, especially considering the amount of testimony verifying the defendant's guilt-no less than five police officers testified the defendant was armed at the time he was arrested and the testimony of Officer Pollard proved the defendant had a prior felony conviction. If there was error in the admission of Ms. Cooper's statement at trial, it was harmless. The verdict is unattributable to the error. This assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 4
By this assignment, the defendant complains the trial court erred by proceeding to sentence the defendant without a mental competency hearing.
As noted in the preceding assignment, a defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. La. C.Cr.P. art. 841(A).
The record in this matter is devoid of any evidence the defendant raised the issue of his mental competency prior to or during re-sentencing on the multiple bill. Consequently, the issue has not been preserved for appellate review.
Nevertheless, even if the issue had been preserved on appeal, the assignment has no merit.
*448 It is well-established that the United States Constitution prohibits the criminal prosecution and conviction of a legally incompetent person. Medina v. California , 505 U.S. 437, 439, 112 S.Ct. 2572, 2574, 120 L.Ed.2d 353 (1992) (citing Drope v. Missouri , 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ; Pate v. Robinson , 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) ).
Louisiana's statutory scheme regarding detecting mental incapacity safeguards a defendant's right to a fair trial. State v. Carmouche , 2001-0405, p. 30 (La. 5/14/02), 872 So.2d 1020, 1041. In Louisiana, "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." La. C.Cr.P. art. 641. The law also imposes a legal presumption that a defendant is sane and competent to proceed. La. R.S. 15:432 ; Carmouche , supra , citing State v. Bridgewater , 2000-1529, p. 6 (La. 1/15/02), 823 So.2d 877, 888 ; State v. Martin , 2000-0489, p. 1 (La. 9/22/00), 769 So.2d 1168, 1169.
According to La. C.Cr.P. art. 642, a party may raise the defendant's mental incapacity to proceed at any time, and when raised, "there shall be no further steps in the criminal prosecution ... until the defendant is found to have the mental capacity to proceed." Further, La. C.Cr.P. art. 643 provides as follows:
The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed. Prior to the ordering of any such mental examination, the court shall appoint counsel to represent the defendant if he has not already retained counsel.
Louisiana jurisprudence, however, has held that the defendant has the burden of proving his incapacity to stand trial by a preponderance of the evidence. State v. Odenbaugh , 2010-0268, p. 6 (La. 12/6/11), 82 So.3d 215, 227 (noting that "there is a presumption of sanity, and before the court is required to appoint a sanity commission, the defendant has the burden to establish his incapacity to stand trial by a clear preponderance of the evidence.").
Although a trial court may receive expert medical testimony on the issue of a defendant's competency to proceed to trial, the ultimate decision of capacity rests with the trial court. La. C. Cr. P. art. 647 ; State v. Holmes , 2006-2988, p. 12 (La. 12/02/08), 5 So.3d 42, 55, cert. denied , 558 U.S. 932, 130 S.Ct. 70, 175 L.Ed.2d 233 (2009).
A reviewing court gives great weight to the trial court's determinations as to the defendant's competency, and the trial court's ruling thereon will not be disturbed on appeal absent an abuse of discretion. State v. Anderson , 2006-2987, p. 21 (La. 09/09/08), 996 So.2d 973, 992, cert. denied , 556 U.S. 1165, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009).
In this case, the defendant raised the issue of his competency on May 2, 2012, prior to trial. Following a mental competency hearing on May 8, 2012, the defendant was declared competent to proceed. On June 22, 2012, the trial judge addressed the defendant concerning his decision to represent himself by taking a realistic account of the defendant's capacity to represent himself, exploring the defendant's education (schooled paralegal) and understanding of legal terms and procedures and granted the defendant's motion, albeit appointing attorney Jason Ullman as defendant's co-counsel.
The present record contains no convincing evidence that the defendant lacked the capacity to proceed at the time of sentencing. A review of the trial transcript shows the defendant very ably represented himself.
*449 He was articulate and intelligent. He was actively engaged in all aspects of the trial, denied guilt, impeached witnesses and evidence and presented a defense. The defendant required co-counsel's assistance on only a few occasions. Moreover, the trial judge was indulgent and took into consideration the defendant's inexperience when considering evidentiary and procedural matters and afforded the defendant some leniency. Although the minute entry of July 24, 2014, indicates the defendant was in the custody of the East Louisiana Mental Health Facility on that day, there is no explanation for his presence or treatment at the facility. Nor is there any other mention in the docket master of the defendant's competency after that date. Moreover, there is no indication in the record that the defendant's condition changed/deteriorated between the end of trial and re-sentencing under the multiple bill.
This Court in State v. Gauthier , 2007-0743, pp.5-6 (La. App. 4 Cir. 3/12/08), 978 So.2d 1161, 1165-1166, considered a factually similar case:
A potential error patent appears in proceedings subsequent to the original trial and sentencing, apparently in connection with the defendant's multiple bill hearing. Minute entries in the record reflect that on February 2, 2007, with the defendant present, the court ordered a lunacy hearing for February 15, 2007. While competency determinations were made prior to trial, there is no indication in the minute entries which followed, or the transcript of the April 2, 2007 proceeding, that a post-trial competency hearing ever took place or that a separate competency determination was ever made in connection with the multiple billing of the defendant. Also, there are no reports from physicians in the record which indicate the results of any post-sentencing examination.
The minute entry of March 16, 2007 states that "clerk will inform the clerk's office which event is scheduled for 3-29-07" with a notation below it that both a lunacy hearing and a multiple bill hearing were set for March 29, 2007. The March 29, 2007 minute entry stated that both the defendant and his counsel appeared that date "for multiple bill hearing" which was then continued on the defense motion. That March 29, 2007 minute entry makes no reference to the lunacy hearing referred to in previous minute entries. At the next setting, April 2, 2007, the multiple offender proceeding occurred, but no further reference is made to anything related to the defendant's mental capacity.
La. C.Cr.P. art. 642 provides that a defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the court has determined that he has the mental capacity to proceed. Here, the record does not indicate the court's determination regarding the defendant's capacity to proceed prior to the multiple bill, although there was a competency hearing prior to trial and the court determined he was competent. Subsequently, the defendant was found competent to represent himself at trial. Furthermore, a review of the April 2, 2007 transcript shows that no mention was made of the defendant's competency, and there was no objection by defense counsel as to any failure to find him competent to proceed with the multiple offender proceeding.
In Gauthier , unlike this case, the trial court raised the issue of competency to proceed and set a hearing, although no hearing took place, and the trial court in this case only requested a medical evaluation and treatment, if necessary, but the matter was never set for a competency hearing.
*450 In short, the record does not suggest a reason to doubt the defendant's competency at the time of re-sentencing. There is no merit to this assignment.
ASSIGNMENT OF ERROR NUMBER 5
In a final assignment, the defendant maintains that because the evidence from the trial and the multiple bill hearing was not included in the record on appeal, he has been denied his constitutional right to full judicial review.
On November 28, 2016, defense counsel filed a Motion to Supplement the record and suspend briefing deadlines because the exhibits from the multiple bill hearing were not made a part of the record on appeal.
On December 8, 2016, this Court ordered the State to file the missing exhibits with the Clerk of Court. On February 6, 2017, the State notified the Court that exhibits had been located.
On June 14, 2017, the State filed a Motion to Supplement the Record with the exhibits.
On June 20, 2017, this Court granted the State's motion to supplement the record with the exhibits.
On September 6, 2017, this Court granted appellate counsel's Motion to File a Supplemental Brief.
On September 8, 2017, appellant's counsel notified this Court she had reviewed the exhibits and did not feel the need to supplement the brief she had already filed. Consequently, this assignment is moot.
CONCLUSION
For the above and forgoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED

The State nolle prosequied count 3 on August 6, 2015.

The State introduced the testimony of Officer Pollard to prove the defendant had a prior felony conviction (simple burglary of an inhabited dwelling, La. R.S. 14:62.2 ) for purposes of the present charge of being a felon in possession of a firearm.

Pursuant to the Supreme Court's directive in State v. Kisack , 2016-0797 (La. 10/18/17), 236So.3d 1201, 2017 WL 4681356, an errors patent review of this case indicates the State met its burden of proving that the ten year "cleansing period" under La. R.S. 15:529.1(C) had not elapsed between the expiration of the sentences for the predicate offenses and the commission of the present offense.

La. C.Cr.P. art. 930.8 provides, in pertinent part:
No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
(1) The application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his prior attorneys. Further, the petitioner shall prove that he exercised diligence in attempting to discover any post-conviction claims that may exist. "Diligence" for the purposes of this Article is a subjective inquiry that must take into account the circumstances of the petitioner. Those circumstances shall include but are not limited to the educational background of the petitioner, the petitioner's access to formally trained inmate counsel, the financial resources of the petitioner, the age of the petitioner, the mental abilities of the petitioner, or whether the interests of justice will be served by the consideration of new evidence. New facts discovered pursuant to this exception shall be submitted to the court within two years of discovery.
(2) The claim asserted in the petition is based upon a final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling.
(3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.
(4) The person asserting the claim has been sentenced to death.

Ms. Harowski was not addressed personally about whether she could find the defendant not guilty if the State failed its burden of proof, etc., however, when the prosecutor asked the group of potential jurors of which Ms. Harowski was member whether she could fulfill her duty as a juror, she did not indicate otherwise.